WILLIAM M. BROPHY

*v.*

CATHARINE LAWLER.

*Filed at Ottawa May 10, 1883—Rehearing denied September Term, 1883.*

1. TRUST—*attempt to defeat it by fraud—as to the manner of granting relief.* Land was conveyed to a person, in trust, to receive the rents, issues and profits, and apply them to the use of another during his natural life, and upon the death of the latter to convey the premises to a son of the

grantor, in fee.  The remainder-man, by fraudulent devices, induced the holder of the life interest to join the trustee in a conveyance of the property to himself, to enable him, as he represented, to sell a portion of the same in order to pay certain taxes and assessments which had accumulated against it, promising that he would then make a declaration of trust for a life interest in the residue, as it originally existed, but which he refused to do.  It was *held,* on bill filed by the *cestui que trust,* that he was entitled to be restored to his rights in respect to the life interest in the portion of the land which had not been sold.

2.  In such case there is no error in decreeing that the fraudulent grantee convey directly to the *cestui que trust* the life estate in the premises, instead of vesting the title again in a trustee.  He could not complain of such disposition of the life estate, as his estate in remainder could in nowise be affected thereby.  The original trust was practically a dry trust.

3.  FRAUD—*effect of subsequent action as a waiver of party's rights.* A person who is induced by fraudulent and false statements to convey his interest in property, will not be precluded from rescinding by afterward dealing with the subject matter of the contract, if at the time of such dealing he was ignorant of the fraud practiced.

4.  So where a person having a life estate in real property is induced to convey it to the remainder-man for a certain purpose, under the promise of the grantee to make a declaration of trust of a life estate in favor of the grantor, and afterward makes a conditional agreement that if a certain other thing is done it will be accepted in lieu of the former obligation, the latter agreement, without performance, amounts to nothing, and can not be set up to defeat the grantor's rights under the original promise.

APPEAL from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. ROBERT HERVEY, and Mr. C. STUART BEATTIE, for the appellant.

Messrs. SNOWHOOK, JOHNSTON & GRAY, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

One Michael Brophy, in 1852, assuming to be a single man, had a ceremony of marriage performed between himself and a lady, with whom he thereafter lived as his wife until in 1854, when she died.  She had one child by Brophy during this period,—the appellant, William Martin Brophy.

In 1855, Michael Brophy, still assuming to be a single man, had a marriage ceremony performed between himself and the appellee, Catharine Lawler, and thereafter he lived with her as his wife, the appellant-being a member of the family, until in 1863, when a woman, claiming to be Ann Brophy, the wife of Michael Brophy by a marriage prior to either of the marriage ceremonies above alluded to, came from Ireland; and thereupon Michael Brophy and the appellee separated, and he thereafter treated the said Ann as his wife. In order to atone, somewhat, for the wrong done appellee, as it is reasonable to presume, Michael Brophy, and Ann, his wife, thereupon, on the 9th day of June, 1862, conveyed, by deed of that date, lot No. 12, in block No. 10, in H. O. Stine's subdivision of part of John Jacob Astor's addition to the city of Chicago, being forty feet by one hundred and fifty feet, to John Hyland, in trust, "to receive the issues, rents and profits of the said premises, and apply them to the use of the said Catharine Lawler during the term of her natural life," and after her death "to convey the same, by deed, to William Martin Brophy, * * * in fee simple." Appellee immediately went upon the property thus conveyed, taking the appellant, then a lad of some thirteen years, with her, calling him and treating him as her son. They lived together upon the property until his marriage, in 1876, shortly after which, in consequence of disagreement between her and his wife, they lived separately, though on this property. In 1865 the city widened Division street, and in doing so took thirteen feet off the south side of the lot, leaving it but twenty-seven instead of forty feet wide. The memorable fire in the city, of October, 1871, destroyed the improvements on the lot. Prior to that time appellee paid the taxes and took care of the property, but subsequently she placed the chief, if not the entire, management of it in the hands of appellant. On the 20th of October, 1880, Hyland, the trustee, and the appellee, united in a quitclaim deed of the lot to appellant. On the

16th of November, 1880, a deed of the east forty-eight feet
of the lot, to Townsend and others, bearing date and pur-
porting to have been acknowledged by appellant and wife,
and also by appellee, on the 15th of October, 1880, was
delivered.  Appellee filed her bill in chancery, against Wil-
liam Martin Brophy, and Hannah Brophy, his wife, asking
that they be enjoined from selling or incumbering the lot, and
that they be decreed to convey it subject to the same trusts
upon which it was originally conveyed by Michael Brophy.
The court decreed that they convey to her a life estate.  Wil-
liam Martin Brophy, alone, appealed.

The first point urged against the decree below is, that the
evidence fails to support the material allegations of the bill.
Counsel say, "the theory of her bill, which is verified by her
oath, is, that in order to pay the taxes and assessments which
had accumulated on the property it became necessary to sell
forty-eight feet of the land, and that to do this appellant
represented that Hyland must surrender his trust, and that
when the title was complete in him appellant would convey
the forty-eight feet, within a few days, to the purchaser, and
then, immediately after, make a declaration of trust of an
estate for life in the balance of the property, in appellee's
favor,"—and this, they insist, has not been proved.  We
can not concur in this view.  The vital part of the allegation
is, that appellant agreed that he would make a declaration of
trust, in favor of appellee, of an estate for life in the lot
after the conveyance of the forty-eight feet, and this, we
think, is, in substance, abundantly proved.  The proof clearly
shows that until the marriage of appellant the relation be-
tween him and appellee was as intimate as that of mother
and son.  That relation, indeed, practically existed between
them from a period when he was too young to know any other
mother, and they were, moreover, sufferers from the same
desertion and the same cause of disgrace.  She had no child of
her own, so far as the proof shows, and no other companion.

Not unnaturally, therefore, she implicitly believed in him, and relied upon his fidelity,—and this affords a sufficient explanation why no formal contract was made and reduced to writing. She had no idea that such a thing was necessary. But it is not required that the proof shall show a formal contract, and the accurate use of technical terms. It is sufficient if it clearly appears that appellee was induced by appellant to believe, and did believe, when she joined Hyland in the quitclaim deed to appellant, that in consideration thereof, after the conveyance of the forty-eight feet to Townsend, she was to be placed in the same situation with respect to the balance of the lot that she then occupied. That, in effect, was simply to declare a trust, in her favor, of a life estate. She testifies and repeats that this was the fact, and she is fully corroborated by Snowhook, an apparently disinterested witness, and we deem it unnecessary to recapitulate at length all the evidence to that effect. It would have been most unnatural that she should have parted with all interest in this property, which, so far as appears from the evidence, was her sole reliance for a present and future support; and to have given it to appellant with an assurance, only, as he claims was the fact, that he would make a will in her favor, would have been to have parted with all interest in it. True, she was at liberty to do this, but the evidence does not show this was her intention. The same evidence which shows a blind confidence in appellant to the degree of disregarding all formalities of a contract, also authorizes the inference that she did not even suppose appellant would be willing to deprive her of all present interest in the property. Had this property been something about which she could have afforded to have been liberal, the case might have been different. As it is, her dependence upon it is, in itself, a corroborative circumstance in favor of the truth of her story.

But counsel argue, if there ever was an agreement, appellee has waived her right to have it performed, and under this

they cite authorities to the point that a party defrauded can not be allowed to deal with the subject matter of the contract, and afterwards rescind it.   The evidence upon which this is predicated is to the effect that some time after the quitclaim deed was delivered, appellant agreed with appellee to furnish her a room in a house on the lot, and pay her $15 per month.   It is not, however, pretended that when any such agreement was made appellee knew that she had been defrauded by appellant, which is indispensable to the doctrine relied upon.   There is absolutely no evidence showing that appellee then knew that appellant had made false statements to her, and thereby induced her to acknowledge the quitclaim deed.   The substance of the preponderance of the evidence is clearly to the effect that appellee was simply willing to reside in the house indicated, and take the $15, and that appellant failed to carry out even that offer.   She denies that she ever abandoned her right to have a life estate in the property.   But, at most, under any reasonable view of the evidence, what is claimed as a contract was but a conditional agreement,—that is to say, if what was agreed to be done should be done, it would be accepted in lieu of the former obligation, and so without performance it could amount to nothing.   (Chitty on Contracts, (11th Am. ed.) 1124, and notes.)   There is no element of estoppel in the case.   It is not shown appellant did, by virtue of any subsequent agreement with appellee, what he would not otherwise have done. She was entitled, equitably, to the possession of all, and his assumed liberality seems to have been chiefly with that which already belonged to her.

We are unable to perceive how it concerns appellant whether appellee's life estate be vested in her absolutely, or in a trustee for her use.   His estate can in nowise be affected thereby.   The same remedy he would have to protection against waste and improvident management of the property in the one case, he has in the other.   The trust was, prac-

tically, a dry trust, and we think no harm is done by the decree vesting the life estate in appellee without the intervention of a trustee.

The decree is affirmed.

*Decree affirmed.*

Subsequently, on an application for a rehearing, the following additional opinion was filed:

Per Curiam:    We have considered the petition for rehearing in this cause, and perceive no reason for changing from or modifying what is said in the opinion heretofore filed. We think the evidence amply sustains the decree, and further remark in that regard is unnecessary.

Counsel, by anticipation, complain that appellant will not receive what he is entitled to have for expenditures, etc. This is premature. The decree directs an account to be taken, and until that shall be done it can not be assumed that appellant will not be therein allowed everything to which he is lawfully entitled. If, when the account shall be taken, appellant shall not receive all that he claims, he may except thereto, and will be entitled to an appeal from any decree of the Superior Court thereon.

Complaint is likewise made that appellant has no security that appellee will pay taxes and assessments. This, also, is premature. We can not assume now that appellee will neglect or refuse, in the future, to pay taxes or assessments. The presumption is, that she will pay them, because it will be essential to the preservation of her estate. But if she shall neglect or refuse to perform this duty, ample remedy will then be found whereby appellant can cause her estate to be charged therewith.

The judgment is *affirmed,* but the cause will be remanded, to the end that the account decreed may be taken.