## Vizard Investment Company v. York.

(Decided January 11, 1916.)

### Appeal from Perry Circuit Court.

1. Cancellation of Instruments—Trusts—Lands—Parol Constructive Trust.—Where the mineral and timber rights in certain land jointly owned by a father-in-law and his son-in-law are optioned to different parties, and the son-in-law, in view of his leaving the State and without other consideration therefor, conveys his portion of the land to the father-in-law for the sole purpose of enabling his father-in-law to carry out the option contracts, and the father-in-law, in violation of the agreement under which he acquired title of the land, conveys it to another with notice of the facts and of the grantor's claim to ownership, the circumstances create a parol constructive trust not within the statute of frauds which equity will enforce by cancelling both conveyances.

2. Cancellation of Instruments—Bona Fide Purchaser.—In an action to cancel certain deeds, on the ground that the land was conveyed from plaintiff to one of the defendants in trust for a particular purpose and the other defendant made the purchase with full knowledge of the trust, evidence examined and held to show that the second defendant was not a bona fide purchaser for value without notice, but acquired title to the land with full knowledge of the facts and of the original grantor's claim to ownership.

3. Cancellation of Instruments—Judgment of Cancellation.—In an action to cancel certain deeds, held that the judgment of cancellation affected only plaintiff's interest and was not reversible on the ground that other interests in the land were included.

4. Cancellation of Instruments—Lien for Purchase Money.—Where a son-in-law conveys land to his father-in-law, in trust for a particular purpose, and the father-in-law, in violation of the trust, conveys it to another with notice, the latter upon the cancellation of the deeds by a court of equity, is not entitled to a lien on the

land for that portion of the purchase money which was placed by the father-in-law in bank and was never paid to the son-in-law.

WOOTON & MORGAN for appellant.

F. J. EVERSOLE and HOGG & JOHNSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Felix York and Robert Caudill were the joint owners of a tract of land, consisting of 167.57 acres, on Mason's Creek, in Perry county. After their purchase of the land they made an oral partition thereof, each taking a particular half. On November 30, 1906, York, for the recited consideration of $430.00, executed and delivered to Robert Caudill a general warranty deed for his half of the land. During the year 1910, Robert Caudill optioned the whole tract of 167 acres to the North Fork Coal & Timber Company. On May 12th, 1911, the Vizard Investment Company purchased the land for the sum of $1,675.10, and Robert Caudill executed and delivered to that company a deed therefor.

This action was brought by Felix York against Robert Caudill and the Vizard Investment Company to cancel the deed from York to Caudill and from Caudill to the company. The basis of the action is that the land was conveyed from York to Caudill in trust for a particular purpose, and that the Vizard Investment Company made the purchase with full knowledge of the trust.

Briefly stated, the facts are as follows: York contracted with the Kentucky River Coal Company to sell and convey to the latter the mineral under his half of the land in question at the price of $3.00 per acre. At the same time he contracted to sell the timber to another company. These agrements were to be performed within a year and if not so performed were to be null and void. York, who contemplated moving out west, conveyed his part of the land to Caudill, so that Caudill could carry out the contract in the event the two companies elected to take the mineral and timber. Caudill optioned the whole tract to the North Fork Coal & Timber Company. A. C. Rhinehart was the president of that company. Rhinehart employed one William Pursifull, a deputy county clerk, to obtain from Caudill and wife their acknowledgment of a deed conveying the land. Be-

fore taking their acknowledgment he was informed by York that the latter had an interest in the land. He was also told by Caudill that York, who had an interest in the land, objected to its sale. On being shown the deed from York to Caudill, he felt that the title which Caudill could convey would be all right and thereupon took the acknowledgment of Caudill and his wife. It further appears that Rhinehart had also been informed of the fact that York claimed an interest in the land. Rhinehart was employed by the Vizard Investment Company to purchase land for it on a commission. Caudill offered to York his portion of the purchase money paid by the Vizard Investment Company, but York declined to receive it. The money was then deposited in the bank by Caudill. It further appears that the land was optioned by Caudill after the original options of the mineral and timber had expired and that there was no consideration for the deed from York to Caudill. On final hearing plaintiff was granted the relief prayed for, and the defendant, Vizard Investment Company, appeals.

The evidence clearly shows that Rhinehart was employed by the Vizard Investment Company as its general agent to purchase land and received a commission therefor. The consideration for the deed from Caudill to the company was paid by the company. Pursifull was appointed a deputy county clerk as a matter of convenience to take acknowledgment of deeds to the company and had authority to accept deeds for the company. The latter's act in obtaining the deed from Caudill and wife was ratified by the company when it accepted the deed. It is manifest, therefore, that both Rhinehart and Pursifull so far represented the company that notice to them was notice to the company. The record further shows that both Rhinehart and Pursifull were apprised of the fact that York was not only living on the land but claimed to be the owner thereof. Indeed, York was first approached to make the deed, but refused to do so. It was not until Pursifull was advised of the deed from York to Caudill that he concluded to ignore York in the matter and to obtain a deed from Caudill and wife. Under the circumstances, the Vizard Investment Company cannot be regarded as a *bona fide* purchaser for value without notice. On the contrary, it accepted the deed with full knowledge of York's claim to ownership. The

case, therefore, is precisely the same as if the contro-versy were between York and Caudill.

For the company it is insisted that the agreement between York and Caudill being in parol, is within the statute of frauds and not enforcible. The seventh section of the English statute of frauds, requiring declarations of trusts in lands, tenements, or hereditaments to be manifested and proved by writing, was never adopted by this State. We also have a statute expressly prohibiting resulting trusts—section 2353, Kentucky Statutes. While many parol agreements with reference to the purchase, sale and holding of lands have been held to be opposed to the spirit of section six of the statute of frauds, relating to the sale of real estate, and, therefore, not enforcible—Parker's Heirs v. Bodley, 4 Bibb, 102; Sherley v. Sherley, 97 Ky., 512, and cases cited; Day, et al. v. Amburgey, 147 Ky., 123—yet it is well settled that parol trust in lands may be created under certain conditions, Smith v. Smith, 121 S. W., 1002. Thus in Payne v. McClure Lodge No. 539, 115 S. W., 764, it was held that an agreement by the chief officer of a Masonic lodge to purchase premises for its benefit, and to take the title in trust for it until he had been reimbursed, and then to convey to the lodge, is not within the statute of frauds so as to require it to be in writing. In the case of Erdman, et al. v. Kenney, 159 Ky., 509, 167 S. W., 685, plaintiff purchased 106 acres of land at a judicial sale, assigning her bid as to 75 acres. The remaining 31 acres were reasonably worth $5,000.00, and, plaintiff being unable to furnish the balance of the purchase price, amounting to $1,631.10, her father furnished her the money as an advancement out of his estate on condition that she assign her bid to him as to the balance of the land; he agreeing to take the legal title in his own name and hold the same in trust for her. It was held that, though the money was not paid as an advancement, it would be a constructive fraud for the father to take advantage of the relation and confidence existing between himself and his daughter and repudiate the trust; and for that reason equity would raise a constructive trust and convert the father into a trustee of the legal title and order him to hold it for his daughter, or to execute the trust in such manner as would protect her rights. In the case of Becker, et al. v. Neurath, et al., 149 Ky., 421, a husband was induced to convey

property to his wife by her promise that at her death she would give it to his children.. The circumstances were held to create a parol constructive trust enforcible in equity between the children and the person to whom the property descended upon the death of the wife, there being no creditors or purchasers involved. It was further held that it was not necessary to the establishment of a parol constructive trust that there should be evidence to show that the grantor was induced to make the conveyance by the actual fraud of the grantee; but, that where the grantor is induced to make the conveyance by the promise of the grantee that he will hold it for the purpose of the trust agreed upon, fraud sufficient to justify the enforcement of the trust will be implied from the failure of the grantee to carry out the contract under which the property was received. Clearly, the principle announced in the above cases is applicable to the facts of the case at bar. Here York and Caudill jointly purchased a tract of land which they subsequently divided by oral partition, each taking a particular part. The mineral and timber on the land were optioned for a certain length of time. Caudill was York's father-in-law. For the sole purpose of carrying into effect the option contracts, York conveyed to Caudill. The deed was without consideration. Caudill was thus made York's agent for a particular purpose. Under the circumstances, a confidential relation existed between the parties, and the purpose for which the deed was made having ceased to exist, and Caudill having violated the trust by conveying the land to another in opposition to York's expressed wishes, a constructive trust necessarily arises in favor of York, which equity will enforce by cancelling the deed in question. Bowler v. Curler, 21 Nev., 158, 37 Am. St. Rep., 501, 36 Pac., 226; Cardiff v. Marquis, 17 N. D., 110, 114 N. W., 1088; Giffen v. Taylor, 139 Ind., 573, 37 N. E., 392; Butler v. Hyland, 89 Cal., 575, 26 Pac., 1108; Brophy v. Lawler, 107 Ill., 284; Kimball v. Tripp, 136 Cal., 631, 69 Pac., 428; Koefoed v. Thompson, 73 Neb., 128, 102 N. W., 268; Pollard v. McKenney, 69 Neb., 742, 96 N. W., 679; Crossman v. Keister, 223 Ill., 69, 8 L. R. A. (N. S.), 698, 114 Am. St. Rep., 305, 79 N. E. 58; Torffin v. Schlenk, 139 Ky., 523.

A reversal is asked on the ground that the judgment deprives defendant not only of the land owned by York but of the land conveyed by Caudill. This contention is

without merit. The particular tract sought to be recovered by York is specifically described in the petition, and the deeds from York to Caudill and from Caudill to the defendant were cancelled only insofar as they affect that boundary of land.

A reversal is also asked because of the failure of the chancellor to adjudge defendant a lien on the land in question for the amount of the purchase money paid. There was no error in this respect, for the reason that York never received any part of the purchase money. On the contrary, the evidence shows that portion of the purchase money intended for York is now on deposit in the Perry County State Bank.

Judgment affirmed.