## DEMPSEY v. D. B. & M. OIL & GAS CO.
### No. 284.

United States District Court,
E. D. Kentucky, Catlettsburg Division.

May 14, 1953.

Arthur T. Bryson, Ashland, Ky., Clyde L. Miller, Louisa, Ky., for plaintiff.

John T. Diederich, Ashland, Ky., John T. Diederich, Trustee, Chesley A. Lycan, Ashland, Ky., LeWright Browning, Ashland, Ky., for the defendants D. B. & M. Oil & Gas Co.

B. J. Pettigrew, Charleston, W. Va., for the Defendant, Ashland Oil & Transportation, Arloe M. Mayne, Ashland, Ky., for the United Fuel Gas Co.

SWINFORD, District Judge.

This case is before the court on the defendants' motion for summary judgment under rule 56(b), Fed.Rules .Civ.Proc., 28 U.S.C.A. The record presents the following facts: in 1930 the defendant, John T. Diederich, contacted one L. A. Dempsey, a person experienced in the oil and gas business as it pertained to the securing of leases in Martin County, Kentucky; Dempsey was lacking in finances or to use his own term he was "broke"; Diederich was financially able to put up the money against Dempsey's time and experience and the two arranged for Dempsey to go into Martin County and secure or purchase some oil and gas leases on a fifty-fifty basis—that is, each of them was to own one half of the leases. Since Dempsey was without funds and apparently somewhat involved financially it was agreed that his one half interest should go to his wife, Mary J. Dempsey, the plaintiff in this lawsuit. It was agreed that title to the minerals was to vest in John T. Diederich, Trustee. There was thus established a partnership arrangement or a joint adventure in which John T. Diederich was to own a one half interest and the plaintiff, Mary J. Dempsey, a one half interest in all oil and gas leases obtained by L. A. Dempsey in Martin County.

On September 1, 1930, John T. Diederich, John T. Diederich, Trustee, and Mary J. Dempsey assigned a one half undivided interest in all of the leases, which were held by John T. Diederich, Trustee, in the partnership arrangement and joint ownership between him and Mary J. Dempsey, to W. H. McClung and H. H. Baker of Hamlin, West Virginia. The assignment contained a provision that Mary J. Dempsey has a ⅟₃₂ royalty in any production of either oil or gas produced or marketed from the premises. In all there were twenty leases. This suit, however, involves only three of those leases.

Following this there was organized the D. B. & M. Oil & Gas Company and all of the leases that were held were assigned by the owners to this corporation. The stock was issued respectively to John T. Diederich, eight-eight shares; to McClung and Baker, eighty-eight shares, and to Mary J. Dempsey, three shares. It should be noted that McClung and Baker had accepted the terms of the assignment of September 1, 1930 by endorsing it with their signatures as parties of the second part.

In 1937 another lease was secured from one Pauley in Martin County. This lease was developed and became productive. Mrs. Dempsey claimed that she was entitled to a one thirty-second of the recovery in the Pauley lease. Mr. Diederich declined to recognize her claim and she proceeded to file suit in the Martin County Circuit Court. Her claim was based upon the provisions of the contract and assignment of September 1, 1930, acknowledged as of September 16, 1930. The case was tried and twice taken to the Kentucky Court of Appeals. See Diederich v. Dempsey, 298 Ky. 323, 182 S.W.2d 393; Dempsey v. Diederich, 313 Ky. 865, 233 S.W.2d 976.

The net result of this litigation was that Mrs. Dempsey was not entitled to a recovery because the contract and assignment from her to W. H. McClung and H. H. Baker under date of September 1, 1930 was void by reason of K.S. 1930, Sections 506, 2128 and 2129. In other words, her efforts to assign and transfer her one half interest in the leases was a nullity because she was at the time a married woman and under a statutory disability to execute such an in-

strument without being joined by her husband.

■ There is some discussion in briefs as to the interest which Mrs. Dempsey owned in these leases. That question should first be settled. The whole record reveals to me a definite understanding, which has not, apparently, up until this time been disputed, that Mrs. Dempsey owned an equal share in these leases with Mr. Diederich. It is argued that Mr. Diederich put up all the money and counsel seems to infer without saying so that Mrs. Dempsey had no right to claim a one half interest. It is true that Mr. Diederich put up the money but the record shows that it was a joint enterprise and L. A. Dempsey, the husband of Mary J. Dempsey, was making a contribution by doing the work of getting the leases. In the case of Diederich v. Dempsey, supra [298 Ky. 323, 182 S.W. 2d 394], Judge Rees in the opinion used this language: "The leases were taken in the name of John T. Diederich, trustee, with the understanding that Mary J. Dempsey and John T. Diederich each owned a one-half interest." That fact seems to have been judicially determined. The finding is clearly borne out by the record, including the testimony of Mr. Diederich.

[2] There seems to be little in this case for the court to decide since it appears that all matters have been heretofore decided by the Kentucky Court of Appeals. The assignment and transfer of Mary J. Dempsey's interest in the leases is void. Therefore, she is now the owner of the property she sought unsuccessfully to convey and is entitled to her share of the proceeds from that property to be credited by any sums which she has received and to be further credited with the cost of development. The court can reach no other conclusion unless the effect of this conclusion can be avoided by one or more of the affirmative defenses set up in the defendants' answer. There can be no doubt that it was the intention of Mrs. Dempsey, Mr. Diederich, Mr. Baker and Mr. McClung that all interest in the leases which Mrs. Dempsey owned was to pass from her in consideration of a one thirty-second of the overriding royalty. The legal title to the property was in Mr.

Diederich; the equitable title to a one half thereof was in Mrs. Dempsey. There is nothing in the instrument of September 1, 1930 to show that Mrs. Dempsey owned a one half interest or claimed any right other than the one thirty-second of the royalty. The leasehold without development was valueless. Baker and McClung, however, knew that they were acquiring legal title from a trustee. They were under a duty to ascertain from the trustee, holder of the legal title, for whom he held such title and in whom the equitable title was vested. It is therefore clear that McClung and Baker were not innocent purchasers for value from John T. Diederich, Trustee, and they are charged with notice of the interest which Mary J. Dempsey had at the time and which the Court of Appeals of Kentucky has ruled that she still has. An equitable estoppel could not apply to this case.

It was said by this court in Rowe v. Chesapeake Mineral Company, D.C., 61 F.Supp. 773, 777: "It is a necessary element in all estoppels of this character either that the parties intended to mislead and deceive the other or that the natural consequence of their conduct was to mislead * * *. There must be either a fraudulent intent or gross negligence which causes a loss to an innocent party." There is nothing in the instant case to indicate that anyone was deceived, mislead or defrauded.

■ It is a settled principle of law in this state that one purchasing real property, the record title of which appears to be complete, but who has information of extraneous facts sufficient to put him on inquiry respecting some interest or right to the property in a third person, will be charged with notice of all facts which he might have learned by means of personal inquiry. Kentucky River Coal Corporation v. Sumner, 195 Ky. 119, 241 S.W. 820; Kentucky Harlan Coal Company v. Harlan Gas Coal Company, 245 Ky. 234, 53 S.W.2d 538.

■ Parol trusts in land are valid and enforceable and one who purchases an interest in land with a notice of a parol trust therein cannot claim to be a bona fide pur-

chaser. Vizard Investment Company v. York, 167 Ky. 634, 181 S.W. 370.

Since the acquisition of the leases, the trustee, Mr. Diederich, as a partner with Mrs. Dempsey, had knowledge of her claim to a one half interest in the leases. This fact is clearly established by the admissions of Mr. Diederich and his counsel throughout the litigation in the state court. The evidence and reasonable inferences which may be drawn from it clearly establish that Baker and McClung knew the fact that Mrs. Dempsey owned a one half interest in the leases. Baker and McClung received eighty-eight shares of capital stock of the D. B. & M. Oil and Gas Company without cost to them and only in consideration of their promise to put up half of the money for the development of the leaseholds.

The same reasoning applies to the claim of the defendants that Mrs. Dempsey had by her subsequent actions ratified the assignment and transfer. The Court of Appeals of Kentucky has adjudged that the contract was a nullity in the case of Brown v. Allen, 204 Ky. 76, 263 S.W. 717, 718, which the court relied upon, with this language: " * * * the executory contract of a married woman to sell and convey her real property was absolutely void where her husband did not join in the writing." Since the instrument is already adjudged void it could not be ratified by any subsequent action or conduct on the part of Mrs. Dempsey. Lykins v. Oaks, 286 Ky. 332, 150 S.W. 2d 231.

I am unable to see how the fifteen year statute of limitations, KRS, section 413.010, could apply to this case. The defendants were holding the property under color of title as trustees for Mrs. Dempsey. It has been pointed out that one who acquires property burdened with a trust about which the purchaser knew or is charged by law with knowing becomes a trustee for the owner. McBain v. Turpin, 1 Ky.Op. 142; Vizard Investment Company v. York, supra. The defendants were not holding the property adversely to the plaintiff. They were holding it in cooperation with her if the contract were valid and for her if the contract were invalid. There is nothing in the record to indicate at any time an open, notorious and adverse claim against her. The contract under which the defendants took possession was an executory contract. The statute could not run against the plaintiff. Elk Horn Coal Corporation v. Jacks Creek Coal Company, 240 Ky. 769, 43 S.W.2d 13. I have read with interest the cases cited by defense counsel on the question of limitation. I do not believe they apply to this state of fact. Neither can the five year statute be a bar. Any right of action which Mrs. Dempsey had did not accrue until the contract of September 1, 1930 was judicially declared void. The removal of the statutory disability by the death of her husband in 1944 had no effect upon her rights. The final judgment in the cases in the state court gave her the right to demand an accounting. This she has done without delay.

It is also contended by the defendants that a plea of res judicata in their favor should be sustained; that all of the rights which the plaintiff had should have been asserted by her at the time she filed her action in the Martin County Circuit Court, at which time she made claim for a one thirty-second of the amount recovered from the Pauley lease; that the judgment in that case was final as to all of her claims against the defendants and that she cannot now go back of the judgment in the state court.

The law does not countenance a splitting of causes of action it is true. A valid claim, however, is not denied on that ground where it is evident that the litigant was not aware of his full rights at the time he instituted the primary action. Mrs. Dempsey, as has been heretofore pointed out, had no knowledge of any claim until the Kentucky Court of Appeals nullified the assignment of September 1, 1930. It would be harsh to charge her with failure to exercise a right to sue for a claim which she did not know she had and which she did not have until the final judgment in the litigation involving the Pauley lease. The rule with respect to "splitting of causes of action" applies only to claims and demands which are part of one cause of action and are recoverable in the first action. It does not prevent a party from suing on a

part of a cause of action nor does the rule prevent a party who is unsuccessful from bringing suit a second time on a new theory or prosecuting separate actions or separate causes of action. 39A Words and Phrases, Splitting a Cause of Action.

On the whole record I feel that this court is bound by the judgment of the Kentucky Court of Appeals in declaring that the plaintiff here had not divested herself of equitable title to the leases and that the defendants' motion for summary judgment should be overruled.

An order to that effect is this day entered.