[No. 3559.]

## THE UNITED COAL COMPANY ET AL. v. THE CANON CITY COAL COMPANY ET AL.

1. PARTIES.

The lessor and lessee of a coal mine may join as plaintiffs in an action for injunction and accounting against a trespasser on the property who has wrongfully taken and is taking coal therefrom.

2. SAME.

The complaint alleged that a coal mining company working upon adjoining lands had extended its operations into the plaintiffs' premises and that another company was doing the work as its agent,—the exact relations between the two not being known to the plaintiffs,—*held* that the joinder of both companies as defendants in an action for injunction and accounting was proper.

3. EQUITY—JURISDICTION.

A court of equity having acquired jurisdiction of a matter for one purpose, may determine the rights of the parties before it for all purposes.

4. PRACTICE—TEST OF RIGHT TO TRIAL BY JURY.

The question whether an issue of fact should be tried by a jury or by the court is not to be determined by the nature of the issue, but by the character of the action in which such issue is joined.

5. MEASURE OF DAMAGES.

In case of willful trespass in the mining of coal, the measure of damages is the value of the coal mined at the time and place of its severance from the realty. If the trespass was not willful but innocent in character, it is that value, less the amount which the trespasser by his labor and expense had added thereto.

*Error to the District Court of Fremont County.*

DEFENDANTS in error, as plaintiffs below, allege in their complaint, that they are the owners of certain coal lands situate in Fremont county, state of Colorado. A part of these lands were owned jointly by plaintiffs, and a part by the plaintiff, Harriet Ripley, alone, but at the time of the wrongs recited all were under lease to The Canon City Coal Company, the lease giving the coal company the exclusive right, for a term of ninety-nine years, to mine the coal from all the lands,

and to sell and dispose of the same when mined. The complaint further alleges that the defendant companies entered upon said lands by means of a shaft, known as the Prentiss shaft, sunk on lands adjoining, and by underground drifts, extracted from the lands of plaintiffs a large amount of coal, and appropriated the same to their own use. It is alleged that The Western Coal Machinery Company, defendant, was mining the coal under a contract with and for The United Coal Company, for an agreed price per ton.

It is further alleged that there are no shafts or other openings on plaintiffs' lands connecting with the coal deposits therein which were being worked by the defendants, and that there is no entry thereto except through the shaft, tunnels and entries of the defendants. It is also alleged that the defendants have been and were, at the time of the institution of the action, removing props, pillars, timbers and machinery from its entries and tunnels, for the purpose of permitting and causing the same to fall in and close up, so as to prevent discoveries of the trespasses committed by them upon the coal deposits in plaintiffs' land, and that the prevention of the discovery of such trespasses would be a great and irreparable injury to plaintiffs. It is further alleged that the defendants have not filed any map or plat of their excavations and workings, as required by the statute in such case made and provided, and that the acts and trespasses of the defendants will cause the plaintiffs irreparable injury unless restrained by the court. Plaintiffs pray that a temporary writ of injunction may issue, restraining and forbidding the defendants, their agents, employees and attorneys from going upon and into the lands of plaintiffs, and from mining therein; also, from taking or removing any coal therefrom, or props, pillars, timbers or other supports from the entries or rooms that lead or furnish ingress to any workings in the lands of plaintiffs, and also from doing any act whatsoever which will cause the entries, tunnels or rooms aforesaid to close up, and from removing any machinery or doing any act which will prevent an entrance to and into

said lands of plaintiffs through the shaft of defendants, and that an order be made for an inspection and survey, by some suitable person or persons of all excavations which have been made by the defendants or by either of them in the lands of plaintiffs.  An accounting is also asked, of the coal mined and taken from plaintiffs' lands, and that the value of the coal so taken be paid into court subject to apportionment between the plaintiffs as their rights may appear, and for such other and further relief as may appear to be meet and proper in the premises.

To this complaint the defendants separately demurred, and upon these demurrers being overruled by the court, separate answers were filed.  In these answers the incorporation of the defendant companies is admitted, and the ownership of the plaintiffs, as alleged in the complaint.  All other allegations are denied.  Upon these issues the cause was tried to the court without the intervention of a jury.  The trial resulted in the following findings :

"Now, on this day, this cause coming on again for final judgment upon the proofs heretofore herein taken, and upon the arguments of counsel for the respective parties already submitted, and the court, being now well and fully advised, doth find generally the issues herein joined in favor of the plaintiff, The Canon City Coal Company, and against the defendants, The United Coal Company and The Western Coal Machinery Company, and specially as follows :

"1st. That the trespass complained of against both said defendants and by both of them committed was so committed by them in a wilful and grossly and culpably negligent manner.

"2d. That plaintiff, The Canon City Coal Company, owing to the character of this suit and absence of averment in the pleadings for any other damages, may recover herein only as for an accounting for the coal actually taken out of its lands and disposed of by defendants, and not for damages done to the ground because of coal, if any, left remaining in pillars or otherwise which cannot hereafter be made available, or for damages, if any, done to said lands for any other cause.

"3d. That the amount of coal actually taken out and disposed of by both defendants from plaintiffs' land was and is thirteen thousand six hundred (13,600) tons of twenty-four hundred (2,400) pounds to the ton, being a miner's ton, or a total of sixteen thousand three hundred and twenty (16,320) tons of two thousand (2,000) pounds to the ton, being a commercial ton.

"4th. That the total amount so taken out and disposed of, fifteen hundred (1,500) tons of twenty-four hundred (2,400) pounds to the ton, or eighteen hundred (1,800) tons of two thousand (2,000) pounds to the ton, were extracts taken out and disposed of by the defendant, The United Coal Company, alone, and before the other defendant, The Western Coal Machinery Company, had any connection with said property.

"5th. That the total amount of coal so as aforesaid taken out and disposed of by the defendant, The Western Coal Machinery Company, under its contract with the defendant, The United Coal Company, extracted, took out and disposed of twelve thousand one hundred (12,100) miner's tons, or fourteen thousand five hundred and twenty (14,520) commercial tons.

"6th. The value of said coal at the collar of the shaft is stipulated to have been two dollars and five cents ($2.05) per commercial ton. The measure of damages in this case is the value of the coal at the collar of the shaft, two dollars and five cents ($2.05) per commercial ton, less the cost, twelve cents per ton, of transporting said coal from the point in the mine where broken to the collar of the shaft, making the measure of the damage one dollar and ninety-three cents ($1.93) per commercial ton for each ton extracted, taken out and disposed of by defendants.

"7th. That a reduction of twenty (20) per cent on the value of said coal per commercial ton shall be allowed for loss.

"8th. That because of the contractual relations existing between the two defendant companies under which the defendant, The Western Coal Machinery Company, extract coal for

the defendant, The United Coal Company, paying the latter a royalty upon each ton so extracted, and in view of the beneficial interest of The United Coal Company in the coal actually extracted under said contract there was and is such privity of interest between said defendant companies that it became and was the duty of The United Coal Company to know from what lands The Western Coal Machinery Company was taking the coal delivered to it, The United Coal Company, and that, under all the facts and circumstances as disclosed by the evidence in this case, the said United Coal Company is jointly liable with it for the said trespass of The Western Coal Machinery Company.

"9th. The United Coal Company individually owes the plaintiff, The Canon City Coal Company, for eighteen hundred (1,800) commercial tons of coal at one dollar and ninety-three cents ($1.93) per ton, less twenty (20) per cent for loss, or a sum total of two thousand seven hundred and seventy-nine dollars and twenty cents ($2,779.20).

"10th. The defendant companies, to wit: The United Coal Company and The Western Coal Machinery Company, are jointly liable to and owe the plaintiff, The Canon City Coal Company, for fourteen thousand five hundred (14,500) commercial tons of coal, at one dollar and ninety-three cents ($1.93) per ton, less twenty (20) per cent thereof as loss, or a sum total of twenty-two thousand four hundred and eighteen dollars and eighty-eight cents ($22,418.88)."

A decree having been entered in accordance with these findings, the defendants bring the case here by writ of error.

Mr. E. W. WAYBRIGHT, Mr. J. T. McDUFFIE and Mr. D. C. BEAMAN, for plaintiff in error.

Mr. CHAS. E. GAST, for defendants in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

It is contended that The Canon City Coal Company and Harriet Ripley were improperly joined as plaintiffs. The

argument in support of this contention proceeds upon the theory that the lessor in an action at law is confined to a suit for the injury to the reversion, and the lessee for the injury to the possession.   This is undoubtedly true under strict common-law rules; but this is not a common-law action. Here the principal relief sought is equitable in character, and the accounting is merely incidental thereto.   Mrs. Ripley was properly joined as plaintiff, as she, with her coplaintiff, was the owner of the estate which the defendants were despoiling.   Her property was being damaged and she was entitled to have the injunctive aid of the court extended for its protection.   Furthermore, as by the terms of her lease to The Canon City Coal Company she was to receive as rental therefor certain royalties upon every ton of coal mined from the land, she was a party in interest in the determination of the amount of coal illegally extracted therefrom by the defendants, and for this reason was a proper party plaintiff in the action.   Civil Code, sec. 10.   Aside from this, the defendants were in no way injuriously affected by the action of the court in refusing to sustain their demurrers upon the ground of a misjoinder of parties plaintiff, the decree, in so far as it affects the defendants, being in no way enlarged by reason of Mrs. Ripley's connection with the suit.

It is also urged that there is an improper joinder of defendants.   In support of this assignment of error, the fact is urged that the district court rendered a single judgment against The United Coal Company for the coal mined prior to a certain date, and a joint judgment against both the defendants for the coal mined after such date.   The complaint alleges that The United Coal Company was operating an adjoining property under a lease, and had extended its operations underground into the plaintiff's premises, and that the machinery company was doing the work as the agent of the coal company, the exact relations between the two not being known to plaintiff.   By a familiar principle of code practice, the rights of all parties to a controversy should be adjusted by a single decree, and full relief be granted in a

single suit, if justice to all can be effectuated.   The complaint
alleges, and the evidence shows, that the injuries suffered
by the plaintiffs were the result of wrongs committed by
the defendants jointly, and that unless restrained, the defend-
ants would work great and irreparable injury to the estate
and prevent a full disclosure of the wrongs theretofore in-
flicted.

Upon these facts equity had jurisdiction to restrain the
defendants from the further spoliation of plaintiff's property,
and it was proper to join all persons who were interested in
the subject-matter of the suit, to the end that their several
rights and duties might be determined in one decree; and as
incidental thereto, courts of equity have full power to grant
such relief as the particular equities of the case may warrant.
Relief may be granted to some of the plaintiffs against all
the defendants, or in favor of the plaintiffs against one or
more defendants; and the decree may adjust the rights of
plaintiffs and the rights of defendants as between themselves
as justice may require.   As we shall hereafter see, the court,
having obtained jurisdiction for one purpose, had jurisdiction
for the purpose of settling all the rights of the parties plain-
tiff and defendants; hence, the demurrer on account of mis-
joinder of defendants, was properly overruled.   1 Pom. Eq.
§ 114; *Danielson v. Gude*, 11 Colo. 87; *Plant v. Stott*, 21
Law Times (N. S.), 106; Morrison's Mining Digest, 141.

The defendants, upon the issues joined, were not entitled
to a jury trial.   In the case of *Danielson v. Gude, supra*, it
is said: "The question whether an issue of fact can be tried
by a jury or by the court is not to be determined from the
nature of the issue, but from the character of the action in
which such issue is joined."   As we have seen, this is an
equitable action, and the mode of trial must be as equitable
cases are tried—viz : by the court without a jury, subject
only to the power of the court to call a jury to answer dis-
puted questions of fact.   *Tabor v. Sullivan*, 12 Colo. 136.

We are also of the opinion that the district court applied
a correct measure of damages.   The defendants, being will-

ful trespassers, it was proper to allow the full value of the
coal mined, without deduction for their labor and expense
in mining the same, the rule of damages being the value of
the ore at the time and place it is severed from the realty.
If the court had found that the trespass of the defendants
was innocent in character, the rule would have been the value
at the time of the conversion, less the amount which the
defendants by their labor had added to that value.   *Omaha
& Grant Co. v. Tabor,* 13 Colo. 41; *Woodenware Co. v.
United States,* 106 U. S. 432.

In this case the value of the coal at the collar of the shaft
is stipulated to have been $2.05 per ton.   By deducting from
this amount the cost of transporting the coal from the point
in the mine where broken to the collar of the shaft—viz:
twelve cents per ton, leaves the actual damage $1.93 per ton,
as found by the district court.

It is contended that the evidence does not warrant the
conclusion that the trespass was wilful.   It is in evidence
that the officers of the company caused an underground sur-
vey of these workings to be made in the spring of 1892,
before the trespasses complained of were committed.   Such
survey certainly must have disclosed the location of the
workings, although the company never communicated the
result to its superintendent in charge of the work.   The wit-
ness Prentiss testifies that he took charge of the property in
the spring of 1892, for The United Coal Company, and that
the work had then crossed the boundary line between the
Prentiss land and that of plaintiffs, and adds: "I then ordered
the entry turned back to the Prentiss land."   The evidence
shows that if such order was ever given it was disregarded,
as the defendants continued in the direction in which they
had theretofore been working without any change in direc-
tion whatever.   The witness, Theodore Coster, testifies that
he was foreman for the Prentiss mine during the year 1893,
assuming the duties of the position on January 9th, and con-
tinued the work until the injunction issued in this case was
served.   He says that an underground survey was made in

November, 1892, and that after he became aware that he was working on plaintiff's land, he was given orders from the machinery company to make the openings therein larger, which he proceeded to do until stopped by the injunction issued in this case.    This witness also testifies that the effect of making the excavations larger would have been to cave in that portion of the mine; and that an examination would thereby have been rendered impossible.    During the time that these excavations were being enlarged, the plaintiff demanded admittance for the purpose of making a survey, but was put off upon one pretext and another until about the time the injunction was served.    There is other testimony in the record corroborative of this testimony, and the court was amply justified in finding that the trespass was wilful. Finding no error in the record, the judgment of the district court will be affirmed.

*Affirmed.*