## Jim Thompson Coal Company, et al. v. Dentzell, et al.

(Decided October 19, 1926.)

### Appeal from Muhlenberg Circuit Court.

1. Mines and Minerals—Where Mineral in Place is Wilfully Removed Without Knowledge of Owner, Measure of Damages is Market Value Without Reduction for Cost of Mining, but Otherwise where Removal is Result of Honest Mistake.—Where mineral in place is wilfully mined and removed without knowledge or consent of owner, his measure of damage is market value at place where it was taken without reduction for cost of mining, but if removal is result of honest mistake, measure of damage is market value of mineral in place.

2. Mines and Minerals—Taking of Coal from Under Plaintiff's Land Held Willful, Justifying Increased Damages, in View of Notice Given Taker and His Failure to Keep up Mining Maps.—Taking by lessee of adjoining land of coal from under plaintiff's land held willful, justifying increased damages where such lessee failed in duty to keep up mining maps and had been previously notified of probability that it was working under plaintiff's land.

3. Mines and Minerals—Where Lessee of Adjoining Land Mined Coal from Under Plaintiff's Land, Plaintiff Cannot Recover Royalties Paid to Lessor Unless Lessee is Unable to Pay Full Amount of Judgment.—Where lessee of adjoining land mined coal from under plaintiff's land, plaintiff cannot recover from lessor royalties paid by lessee to her, unless lessee is unable to pay full amount of judgment, since there is no privity of contract between plaintiff and lessor.

4. Mines and Minerals.—Lessor who received no royalties for coal willfully mined by lessee from under adjoining land, held not liable to adjoining landowner.

HUBERT MEREDITH for appellants.

EAVES & SANDIDGE for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming in part and reversing in part.

The appellees, Dentzell, &c., were plaintiffs below in a suit against the Jim Thompson Coal Company, to recover damages for the alleged wrongful mining and removing of coal from the lands of appellees in Muhlenberg county and recovered a verdict for $7,300.00, and $200.00 against Mrs. Sallie J. Thompson and the coal company, and cost, and from that judgment this appeal is prosecuted. Mrs. Thompson leased a boundary of coal to the Jim Thompson Coal Company upon a royalty basis. This property adjoins that of appellees for a considerable distance, and the same seam of coal underlay both. In 1922 and 1923 the coal company in the prosecution of its coal mining business extended its entries, passageways and rooms, which were something like 90 feet under ground, into the lands of appellees and took and removed therefrom 3,166 tons of coal from the number 9 seam and converted the same to its own use. There is no dispute at all about the ownership of the property. It is agreed that 3,166 tons of coal were taken by the Jim Thompson Coal Company from the lands of appellees, but there is a sharp dispute about whether the taking was willful on the part of the coal company and its manager, or was the result of honest mistake. The company officials contend that the taking of coal from the property of appellees was the result of honest mistake, while appellees insist that the taking was willful, and insist that they should recover the full value of the coal at the place where it was mined without deduction for cost of mining.

The trial court accepted this view and adjudged accordingly.

This court has adopted the rule and it is now well established that where mineral in place is, through the willful act of another, mined and removed without the knowledge or consent of the owner, his measure of damages is the market value thereof, at the place where it was taken, without reduction for cost of mining; while if the mining and removal is the result of honest mistake as where there is a dispute about the location of the property line, then the measure of damages is the fair market value of the mineral in place and may be usually fixed by proving the customary royalty in that vicinity. North Jellico Coal Company v. Helton, 187 Ky. 394; New Domain Oil and Gas Company v. McKinney, 188 Ky. 186; White, Mine and Mineral Remedies Sec. 568; Bolles Woodenware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398; 27 L. Ed. 230; United Coal Company v. Cannon City Coal Co., 24 Colo. 116, 48 Pac. 1045.

While there is no direct evidence proving that the officers of the Jim Thompson Coal Company willfully entered upon the lands of appellees and mined and took the coal there are a great many proven circumstances which tend strongly to establish the fact that the coal was willfully taken, for it is shown beyond a doubt that the coal company did not keep up its mining maps as required by statutes, section 2724-1, nor have a map filed with the chief mine inspector at his office in Lexington, showing the workings of the mine as required by the statutes. After the mining company had driven its entries to within 1,000 feet of the property line of the plaintiffs, it became its duty to have a map made showing the location of the property line and the nearest working place in the mine to such property line. This does not appear to have been done by the company. There was also evidence to prove that the appellees, or at least some of them, notified the president and general manager of the Jim Thompson Coal Company that the blasting in the mine under appellees' lands indicated that the entries had been driven beyond the property line by the Thompson Coal Company, and asked for an investigation and an opportunity to go into the mines and find out the facts. This was long before the institution of the action and about the time the mining operations were begun on the property of appellees. All these facts taken together

were sufficient, it seems to this court, to have justified the finding of the chancellor below that the taking of the coal was willful, for it would seem that the management of the coal company had its attention called to the fact that the mining operations had been driven beyond the property line before much of the coal was taken.

There is, however, no controversy about the number of tons of coal mined, 3,166 tons. The market price of the coal at the mines about the time of the taking was from $1.85 to $2.15 per ton of that particular quality of coal. If we take the average price, two dollars ($2.00) per ton, and multiply it by the number of tons we get $6,332.00. The chancellor gave judgment for $7,500.00, which it would seem was more than the facts warranted. To that extent the judgment is reversed and the lower court will enter judgment for $6,332.00, with cost.

Appellant, Sallie J. Thompson, complains that judgment was awarded against her. She was made a party defendant along with the coal company because she was the lessor and was supposed to have received royalties on the coal taken from the lands of appellees. She denied she received royalties from the coal so taken. If, however, the Thompson Coal Company took coal from the lands of appellees and accounted to Mrs. Thompson, its lessor, for the royalties, the company is entitled to recover all such money from her; but as to the appellees there is no such right because there is no privity of contract between them and Mrs. Thompson. It would seem, however, on principles of equity that in case the company is unable to pay the full amount of the judgment, or becomes insolvent, the appellees may have and recover of Mrs. Thompson any sum owing by her to the Thompson Coal Company on account of such payment of royalties, but that question is not before us because it does not appear in this record that Mrs. Thompson received any royalties on account of the coal taken from the lands of appellees. Certainly she is not liable to appellees for the wrongful taking of the coal by the Thompson Coal Company unless she was a party to the taking or knew thereof, or in some way contributed to the taking. There is no evidence in the record to show that Mrs. Thompson contributed in any way to the wrongful taking of the coal, or does it appear that she even knew of the taking until long thereafter. Inasmuch as she was not paid any royalties on the coal taken from appellees no judgment

should have gone against her on that account, and to that extent the judgment of the lower court is reversed. But the order of injunction granted by the lower court restraining both the company and Mrs. Thompson from further entering upon the lands of appellees and mining and taking other coal is left in full force and effect.

For the reasons indicated the judgment is affirmed in part and reversed in part.