## Thompson et al. v. Dentzell et al.

(Decided February 7, 1930.)

HUBERT MEREDITH for appellants.

EAVES & SANDIDGE for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant, Mrs. Sallie J. Thompson, has owned for a number of years a coal lease in Muhlenberg county

known as the Haden and Bohannan lease, but which, for the sake of convenience, we shall call in this opinion the "Thompson lease." The record shows that for the past ten years or so Mrs. Thompson has sublet this lease to some half a dozen or more mining companies in turn, each of which was unsuccessful and went into bankruptcy. During this period Mrs. Thompson was represented in the management and subleasing of her lease by her husband, the appellant J. M. Thompson, who had complete charge of all of her business in this connection. About all that Mrs. Thompson did with reference to this lease was to sign papers prepared under the direction of her husband. In the years 1922 and 1923, her sublessee was the Jim Thompson Coal Company, which this record indicates was dominated by her husband, J. M. Thompson. The lease owned by Mrs. Thompson lay next to the property of the Dentzell heirs, the present appellees. In operating the Thompson lease, the Jim Thompson Coal Company mined over and into the Dentzell land and removed therefrom over 3,000 tons of coal. A suit for an injunction and for damages was brought by the Dentzells against the Jim Thompson Coal Company and Mrs. Sallie Thompson on account of this removal of the coal from the Dentzell land, and a judgment was rendered in that case for the Dentzells, granting them the injunction sought and awarding them damages for the coal which had been removed. The measure of damages imposed was on the theory that the trespass had been willful and intentional. On an appeal to this court, the judgment was affirmed as to the coal company, but was reversed as to Mrs. Sallie Thompson, because it was not shown that she participated in the trespass in any way or that she had received any royalties from the coal removed from the Dentzell land. Jim Thompson Coal Co. v. Dentzell, 216 Ky. 160, 287 S. W. 548. After this case was disposed of, the Thompson Coal Company became bankrupt, as had all of its predecessors, and it was succeeded in the ownership of this sublease by the Drakesboro Coal Company, which soon shared the fate of its predecessors. In the bankruptcy proceedings of the Drakesboro Coal Company, Fred E. Roland bought in the sublease, but he did practically nothing with it, and later turned it over to the Puritan Coal Company, which operated it until it was turned over to C. A. Rogers. While the Puritan Coal Company operated the sublease, the record shows without any doubt that J. M. Thompson was its presi-

dent and general manager, that he had complete control of the mine, and told the workmen where to mine and what to mine. In September, 1925, the sublease was turned over to C. A. Rogers, who organized the Rogers Coal Company, and it operated the sublease from October, 1925, until long after June, 1926. In June, 1926, the appellees discovered that mining operations were being conducted from this Thompson lease under their land. They complained to the Rogers Coal Company, which investigated the matter and found that the appellees were justified in their complaint. The appellees thereupon brought this suit against Rogers individually, the Rogers Coal Company, Sallie Thompson and J. M. Thompson, for an injunction enjoining all of them from further trespassing upon the Dentzell property, and for damages for the coal theretofore mined from their land. The court awarded the appellees a judgment against the Rogers Coal Company in the sum of $5,520 for 4,600 tons of coal extracted by it, and against J. M. Thompson in the sum of $10,792.60 for 8,993 tons removed by him and the Puritan Coal Company, and against Sallie J. Thompson for both amounts, and enjoined all four in accordance with the prayer of the petition. The Rogers Coal Company, having in the meantime suffered the same fate as its predecessors, has not appealed, but Sallie Thompson and J. M. Thompson have appealed from so much of the judgment as awarded any damages against them.

We are confronted in this case with two questions: First, should any judgment have been awarded against the Thompsons? Secondly, if so, to what extent?

While there is some conflict in the evidence, it very satisfactorily discloses that the Puritan Coal Company, under the management and by the direction of J. M. Thompson, mined over and into the Dentzell property. As he participated in and directed the trespass of the Puritan Coal Company, he is as much responsible for the trespass as the coal company. See Blackberry, Ky. & W. Va. Coal & Coke Co. v. Kentland Coal & Coke Co., 225 Ky. 346, 8 S. W. (2d) 425. There can be no doubt, therefore, of the correctness of the court's holding that Thompson was liable for this trespass. It is not contended that the Rogers Coal Company did not mine coal from the Dentzell property, and the Thompsons make no complaint of a judgment against that concern. Was Mrs. Thompson liable for the trespasses of the Rogers Coal Company and of her husband or of either? The proof

very satisfactorily establishes that, when the Rogers Coal Company took over this sublease, the only part of the Thompson mine which could be operated was what is known in this record as the Cavanaugh entry. This entry ran in a northerly direction from the shaft toward the Dentzell line. Just as it reached the Dentzell line, it turned to the east and ran parallel to this boundary line. The coal which was taken from the Dentzell mine was mined from seventeen rooms which had been turned to the north from this Cavanaugh entry as it ran to the east. There were also some rooms turned to the south of this Cavanaugh entry. The proof further satisfactorily establishes that, when this lease was sold to the Rogers Coal Company, J. M. Thompson, who was acting for his wife, Sallie Thompson, in this transaction, and for whose acts in this connection Sallie Thompson is of course responsible, represented to the Rogers Coal Company that all of these rooms from which coal was being extracted was on the Thompson lease. He displayed to the Rogers Coal Company either an incorrect or incomplete map of the Thompson mine which misled the Rogers Coal Company into the belief that the coal was being mined solely from the Thompson lease. Acting in accordance with the representations made it, the Rogers Coal Company continued to extract the coal from these rooms to the north of the Cavanaugh entry. As it was led to commit these trespasses through the misrepresentations of the Thompsons, the latter are responsible for the coal mined by the Rogers Coal Company as well as the company itself. See the Kentland Coal & Coke Company case, supra. Hence the court correctly held that Mrs. Thompson was as liable for the coal mined by the Rogers Coal Company as was the coal company itself.

So far as the coal mined from the Dentzell land by the Puritan Coal Company is concerned, we cannot say that the chancellor erred in his finding, which he necessarily made, to enter the judgment he did, to the effect that the trespass of the Puritan Coal Company was induced by the acts of J. M. Thompson in his handling of this lease for his wife. There was a great deal of evidence to support this holding, and, while there was evidence to the contrary, the finding of the chancellor will, under familiar principles, be upheld, at least where the appellate mind is not convinced that he erred. This being true, the appellant Sallie Thompson is as liable

for the trespass of the Puritan Coal Company as she is for that of the Rogers Coal Company.

The second question we have to answer is, To what extent are the appellants liable? This depends on the amount of coal extracted and what measure of damages should be applied. The appellants in their brief express ignorance as to where the court got the figures upon which he entered his judgment. To us, this is quite plain. Of the seventeen rooms turned to the north of the Cavanaugh entry, four are shaded in red on the map in this record known as the Orcutt map, and thirteen are shaded in yellow. Orcutt testified that the coal removed from the rooms shaded in red amounted to 4,600 tons and from the rooms shaded in yellow, 8,993 tons. This totals 13,593 tons. Rogers testified that the total amount of coal removed from the Thompson mine by his company before he discovered they were on the Dentzell property was, excluding coal used for steaming purposes of the Rogers Company, 47,771.67 tons, of which 10 per cent. came from the Dentzell property. After he discovered that the Rogers Coal Company was over on the Dentzell land, it ceased to mine any more coal from that property. According to Rogers, then, his coal company took from the Dentzell property about 4,700 tons. The court, however, only charged his company with 4,600 tons. Deducting this 4,600 tons from the 13,593 tons, we have left 8,993 tons which the Puritan Coal Company extracted. While there is some conflict in the evidence about these figures, the preponderance of it supports the chancellor that they represent at a minimum the coal extracted by the Rogers Coal Company and the Puritan Coal Company under the direction of Thompson. At least we cannot say that the chancellor erred in so finding. We are left, then, the question whether the court erred or not in assessing against the appellants the market value of the coal at the place where it was taken without reduction for cost of mining, being the measure to be applied where the trespass is willful. See J. M. Thompson Coal Company v. Dentzell, supra. There is in this case a great deal of evidence and proof of circumstances which, if believed, established a willful trespass on the part of the appellant J. M. Thompson, for which he and his principal, Mrs. Sallie Thompson, are responsible. Not content with their escape in the J. M. Thompson Coal Co. case, supra, they have acted in this case in such fashion as to convince the mind that they were

not innocent in the subsequent trespasses upon the Dentzell property. Their mine maps were either willfully incomplete or willfully incorrect. The Cavanaugh entry turned to the east precisely where it should have turned to the east—that is where it reached the Dentzell boundary line—and yet large rooms were turned over onto the Dentzell land. Thompson's evasive and unsatisfactory manner in testifying destroys any faith to be put in his testimony, and that of Rogers as to the misrepresentations of Thompson goes also to establish the willfulness of Thompson's trespasses. There was, then, ample evidence to sustain the chancellor's finding in this regard.

No error appearing prejudicial to appellants' substantial rights, the judgment is affirmed.