Opiwjow or the Court,
by Judge Mills.
■ THE Bank of Green River having from some cause or other, which does not appear in this record, ceased it? operations, on the 5th February, 1819, the legisla-tu re of this state (see Session Acts 1818, 685) passed an act authorising it to resume its corporate functions, upon ■certain conditions therein specified, some of'which are as follows:
u 1st. The president and directors of said bank, shall■ he bound, jointly and severally, in their individual capacities, to pay and discharge in spedic, all notes heretofore, or which may hereafter be-thrown into circulation by said corporation, whether the sanie be payable to' the bearer or to any individual or individuals, or body corporate, to his, her, their or its endorsee.
. “ 2d. The notes heretofore thrown into circulation by said corporation, shall be paid and discharged as follows, .towit, .one fifth in sixty days, one fifth in one hundred and twenty days, one fifth in one hundred and eighty days, one fifth in two hundred and forty days, and one fifth in three hundred days. And when the holder or endorser of any note or notes heretofore issued by said corporation, shall present the same for payment, it shall be the duly of the president and directors of said bank, to execute and deliver to such holder or endorsee, post-notes, signed by the pi’esident and countersigned by the cashier; which post-notes shall be for one fifth of the amount of notes presented for payment, and made paya: blc in sixty, one hundred and twenty, one hundred and eighty, two hundred and forty and three hundred days, as aforesaid; and which post-notes shall bear interest *430 from the 25th day of November, 181'3, and shall’ he so expressed on the face of them. ,
“ 3d. All notes heretofore issued by said corporation, and which are presented for payment, and shall not .be taken up by post-notes, as aforesaid, may be presepted to, and be protested by, a notary public, and shall thereafter carry interest from the. said 25th day of November, at the rate of ten per centum per annum until paid.”
After some further provisions, not necessary to be recited, the act directs, “ that the president and directors of said corporation shall, annually, on the day after their election, and before they enter on the discharge of their duties, during the continuance of the charter, execute bond to the Commonwealth of Kentucky, in the penalty of fifty thousand dollars, conditioned well’and truly to pay all debts contracted by said corporation, whenever the same shall be demanded at the banking hou-se or office of said corporation; which said bond, maybe put in suit from time to time, by any person or persons, or body corporate, injured by a breach of the condition thereof, and judgment obtained thereon.” This bond was to be filed in the clerk’s office of the circuit court for the county, and be there kept safely.
The same act also provides, that the president and directors should signify the acceptance or rejection of the act by a vote thereon, on or before the first- day of March then next ensuing, and on the acceptance thereof, the act was to become part of their charter, and be obligatory upon them, and as soon thereafter as may be, the bond was to be executed.
On the 26th day of February, 1819, the president and directors of the said bank, executed their bond and filed it with the clerk, in a penalty named in the act, conditioned as follows: “ The condition ofthe above obligation is such, that if the above bound president and’ directors of the Bank of Green River, shall and do well and truly pay all debts contracted by said ■ corporation, whenever the same shall he demanded at the banking house or office of said corporation, in the manner, by the portions, and at the times prescribed by an act of the last assembly of the state of Kentucky, to amend the charter o-f the Bank of Green river, then the above obligation to be void, otherwise to remain in full force.”
James Weir, as relator of the plaintiff, brought, this action of debt for his use, and after reciting, the- penai *431 part of :?he bond and condition, set out for breach, that he field five post-notes of equal value, payable in the instalments directed by the act, dated 21st August, 1819, thé last of which was payable three hundred days after date, and one of a different sum, dated 30lh March 1819, payable three hundred days after date, all given to take up alike amount ofnotes issued before the passage of the act aforesaid; also, seven notes of the ordinary kind, issued or put into circulation, before the passage of said act, payable to bearer; all which notes, he avers, were presented at the banking house or office of said corporation, and payment demanded, “ at the banking house or office of said Bank of Green River, after the six first mentioned, notes respectively became due, and whilst the said defendant continued president of said Baiik of Green River, and before any election for president and directors of said bank was held, subsequent to the election under which the bond declared on was given, and after the dale, execution and delivery of the said seven last mentioned notes; and upon thte. failure of the said president, directors and company of the Bank of Green River, to make payment of the notes afore-Báid, the said notes were regularly protested for non-payment, whereby actio'n accrued,” &c. This action was commenced on the 4th day of September, 1821, against thp president alone, omitting the other obligors in the bond. The defendant appeared, and after .craving oyer of the bond, demurred, in which the defendant joined. The court below gave judgment on the demurrer against thfe relator of the plaintiff below; to reverse which, he has prosecuted this writ of error.
..It is now contended, that the declaration shows .no gcffid cause of action, and does not make out any liability in the defendant to pay the amount demanded. Something has been said in argument, about,official liability alone resulting from this bond, and that it only bound the parties to pay, officially, during the term for which they were elected, from the funds of the institution. On this subject we can have but one opinion, that the bond bound the parties in their individual estates* and that this was the intention of the act. It has also been insisted that the breach of .this bond is badly alleged, and that although it may show a cause of action on the post-notes, or some of them, it does not show it with respect to the others; for that some of the post-notes, to wit, one of them «ffited on the 21st of An- *432 gust, for two hundred and forty days, and those of the same date payable in three hundred days,- could not, according to the declaration, have become due before the expiration of the year for which the.president and directors were elected, and that it does not appear that either of the post-notes, or the other original notes, were presented, or the last mentioned notes protested in ■said year. If part of said notes were not demanded in said year, and>part were, and breach was assigned as to each, it would not follow that the court below rightly-sustained the demurrer, even if it be conceded that a presentation after the year would not create a liability on the bond; for although a general verdict cannot be sustained, where there are some good and some bad breaches, in covenant and in debt, on bonds .with collateral condition, yet the rule is too well settled to need authorities to support it, that a general demurrer in such case cannot be sustained. If, on demurrer, it appears that there is enough assigned to sh’ow a subsisting cause of action to any extent, the demurrer must be overruled, and the jury, in their finding, may apply it exclusively to those breaches well assigned, disregarding, under the direction of the court, those that are ill assigned, and thus the verdict and judgment be good. Of course, in this state of case, the demurrer-could not be supported.
It is, however, somewhat uncertain, from the face of the declaration, whether any of the post-notes, or indeed any of the original notes, were-presented within the year for which the president and directors who executed the bond, were elected. Hence it is contended, that if they were presented afterwards, there would be no liability on the bond. Various questions have been raised respecting the extent of liability which this bond imposes. It may be urged, that it is a general undertaking to pay the debts of the corporation, and that it lives and remains lon'g after the office expired and the corporation is dissolved, whether the party holding demands against the corporation did or did not proceed in the mode pointed out in the act, and that the act itself imposes individual responsibility for all the debts, on ■the president and directors, and also on the stockholders, to the extent of their stock. Whether such an extensive liability is created by the bond or by the act in question, we need not now enquire, and would not be *433 Understood as expressing any decisive opinion* Thus far $ve think it did extend, with regard to all the notes put into circulation before the .passage of the act. If they were taken up by post-notes, and.^the post-notes were not paid on application, with their interest,' as required; or if their original notes were not taken up, by post-notes, and were protested by a notary public, as the declaration here alleges, and these applications for payment, in case of the- post-notes, or protest, in case of original notejj, were made during the continuance of the office of the president and directors, there can be no reasonable doubt entertained, that they did become liable in their individual estate, to an action upon tb£ bond. ■
Assuming this, for argument’s slice, as the full extent of liability, the question then remains, could the obligors become liable, if the application aforesaid was. made after the year expired, for which these officers wore elected? For it is rather to be inferred, that the application'alleged was made after the year; hence the necessity of suggesting that no subsequent election had ’intervened.
We do not perceive any .clause in the charter, au-thorising the president and directors to hold over, after the year, in case no new election was held. But was such a clause necessary? And did the functions of the old officers cease, on such failure to re-elect? We conceive not In every case of corporations created by statute, so far as the statute directs and provides, it diust rule; but in cases- pretermitted by-the statute, 'there are numerous principles -of common law, which apply, and guide and sustain the corporation; and to ward off their application, it would be necessary for the legislature to use negative expressions, or such as would exclude those general rules of law. It is one of those general rules, that if a corporation fails to elect officers on its corporate day or time, still the corporation docs not cease; the old officers retain their powers, and may act until they are superseded by a new appointment. "Hence, the president and directors in this case, continued to be so, and were subject to liability on then-bond, a? much so after, as before the year expired,.if it be true, as the declaration alleges, that no subsequent election had taken place. See People vs. Runkel, 3 John. Rep. 147, and-authorities thqrc cited; 5 John *434 Chan. Rep. 378, Shee vs. Bloome, &c. Of course, this objection to the breach cannot be sustained.
There is one further objection, which we will now consider. The statute provided, that if the president and directors should dissent from the act, they should express their dissent by resolution; and in such case, they should continue their corporate powers, so far as to sue and be sued, until the first of July 1820; but in case they assented to the act, the corporation -was to continue until the first of July 1821, wheij, the charter was absolutely repealed; and as this suit was not commenced until September 1821, it may be insisted that it is wholly uncertain whether the application to discharge these notes was made previous to the expira-' tion of .the charter or after it was extinct, and therefore the breach is badly assigned, it is the Opinion of some, that the legislature cannot repeal a charter, granted, as this charter was, without reserving the right of repeal. However this may be, we have n® doubt that a corporation may surrender to government its franchises and privileges, and that it may consent to a repeal of its charter. Indeed, even after a repeal has' passed, the corporation may consent to it In this case, the act seems to consider the corporation, from some cause or other, as unable to act further, without legislative aid. The act was not imposed upon it without its assent. It was competent for the legislature to pass a repealing law, and tender it for the approbation or assent of the corporation; and if that assent was given, we have no hesitation in saying that the repeal would be, and in this case is, valid; for the corporation did assent to the act, and the bond executed, on which this suit is founded, is clear evidence of that assent, and therefore the corp'oration must have ended on the first day of Jtrty 1821. If, then, the breach in this case did leave it wholly uncertain whether the application for the payment of the notes in question was made within the charter, we should hesitate about its validity, or should be led to determine the question, whether these, obligors could be liable on this bond by any subsequent application for payment. But, on a careful examination of the breach, we are relieved from this difficulty. It is alleged, that the application was made “whilst the, said defendant continued president of the said Bank of Green River f and before any subsequent election fof *435 sufeh áfficers intervened. As-the defendant could not continue to be president, after the repeal of df the charter,'and after that time there was ho corporation, no oP ficers and no president, the breach mgstsmean, that the. charter had not then expired.
■Upon the whole calse, therefore,.we sec no phjection to the action, or the liability of the defendant below, or-to the assignment-of breaches in the declaration, sufficient to warrant the decision of the court below, in sustaining the demurrer and rendering judgment for the defendant in that court.
The judgment must, therefore, be reversed’with costs, and the cause be remanded, with directions fo that court to render judgment for the plaintiffbelow on demurrer, unless the defendant smul obtain" leave to withdraw the demurrer, upon'tendering an issuable, plea or pleas to the action.