## Turner, et al. v. Bowens.

(Decided May 28, 1918.)

## Appeal from Letcher Circuit Court.

1. Quieting Title—Action—Legal Title and Possession.—In an action under section 11 of the Kentucky Statutes to quiet title, the plaintiff must have both the legal title and the possession.

2. Quieting Title—Action—Character of Title Necessary.—In an action to quiet title under section 11 of the Statutes, it is not essential that the plaintiff should have a paper title, he need only have such title as would give him the right to the possession of the land, and this character of title may rest on adverse possession or on a sufficient parol agreement by which the party claiming the land has the right to its possession.

3. Quieting Title—Action—Character of Possession Necessary.— The plaintiff in a suit to quiet title need not be in the actual physical possession of the particular land the title to which he wants quieted if the land to which he desires title quieted is a part of another adjacent piece of land that he is in actual possession of, and both pieces are claimed by him to a marked boundary surrounding both.

4. Frauds—Statute of—Parol Agreement as to Division Line.—Where there is a bona fide dispute between two adjoining landowners as to the location of the line between their lands, although one of them may have the senior and the other the junior title, and although the lines of the junior title may call for the lines of the senior title, and this dispute is settled by the establishment in parol of an agreed line, this parol agreement will be binding and the agreed line will take the place of the original line.

5. Frauds, Statute of—Parol Agreement as to Division Line—Limitation.—Where an agreed and marked line is established by parol it is not necessary to the validity of the line that both parties should acquiesce in it for fifteen years. An oral agreement fixing the boundary lines will be enforced if the parties have marked and recognized the line, and treated it as the true division, although it has not been so recognized for fifteen years.

J. M. COOK and F. G. FIELDS for appellants.

JAMES H. NEWMAN and R. MONROE FIELDS for appellee.

Opinion of the Court by Judge Carroll—Reversing.

This controversy is about the ownership of a small tract of land claimed by the Nieces, who were vendors of Turner, the appellant, on the one side, and Bowens, the appellee, on the other.

In 1867 there was conveyed to Bowens a tract of land in Letcher county "beginning at the mouth of a small

drain, a short distance below the lower end of the Owing
Colly field; thence running up the Camp Branch to the
upper end of the Ewings field''; and thence with differ-
ent general courses to the beginning, containing 200 acres
more or less.  In 1895 there was conveyed to the Nieces
a tract of land and the description thereof called for
Bowens' line, and ran a part of the way with this line on
the call mentioned.

About 1902 the Nieces and Bowens got into a contro-
versy as to the dividing line between their respective
tracts of land at the point where the Niece deed called
for the Bowens line, and, according to the contentions
of the Nieces, this dispute was settled by the making of
an agreed line between their lands along the points in
dispute, which agreed line was thereupon marked and
thereafter recognized by both of them.  After this, the
Nieces sold the land up to the agreed line to Turner, and
Turner sold the mineral rights to the Hamilton Realty
Company.  After this sale of the mineral rights, which
took place about 1912, a controversy came up as to the
line between the lands of Bowens and the lands conveyed
to the Nieces, Bowen insisting that the line should be
located as designated in the deed he got in 1867, while
the Nieces, and those claiming under them, contended
that the agreed line was the line between their lands.  As
a result of this controversy, the Nieces filed a suit against
Bowens, in 1914, and in the petition, as amended, it was
set up that more than twelve years before the institution
of the suit, the Nieces and Bowens had a dispute as to
the location of the line between their lands, and to settle
this dispute they agreed on the establishment of a line,
and the line so agreed upon had been marked, and rec-
ognized as the line by both of them for several years be-
fore this suit was brought, and each had been in the
possession of the land on his side of this agreed line.
They further averred that Bowens was setting up claim
to the land on their side of the agreed line, and giving it
out in speeches that he was the owner of the land, and
they asked that their title be quieted.  For answer to this
suit Bowens denied all of the material averments of the
petition.  Thereafter the case was prepared for trial,
and on a hearing the suit of the Nieces, to which Turner
and the Hamilton Realty Company had become parties
as the vendees of the Nieces, the petition was dismissed.

As the deed of the Nieces was made after the deed to Bowens, and called for his line, the dispute originally arose as to the location of Bowens' line, because wherever his line was, there also was the line of the Nieces. It appears that Bowens' deed called for the mouth of a small drain, and the dispute as to the location of his line grew out of the fact that Bowens claimed that this small drain was at one place, while the Nieces claimed it was at another place, and the correct line depended upon which one of these drains was the one called for in the Bowens deed.

The weight of the evidence clearly shows, as we think, that this dispute was settled about 1902 by the location of an agreed and marked line at the point now claimed by the Nieces as their line. In fact, all of the evidence in the case shows that there was a dispute and that this dispute was settled by the making of an agreed line, and it further appears that after this agreed line was established Bowens erected a fence on the line, thus showing that he recognized the agreed line as the correct line, and it further appears that after this, both parties claimed to this line. It further appears that Bowens did not question the correctness of this agreed line until several years after it had been located, and not until the Nieces or Turner, or perhaps both of them, sold the mineral in the land to the Hamilton Realty Company.

It is insisted by counsel for Bowens that the lower court correctly dismissed the petition, because it was an action to quiet the title, and such an action, under section 11 of the Kentucky Statutes, cannot be maintained unless the party bringing the suit has "both the legal title and possession" of the land to which he seeks to quiet the title. This argument is put up on the ground that it does not appear that the Nieces or Turner have the legal title to this land in dispute, or that they had ever been in the actual possession of it. It is true that in an action under this statute to quiet title the plaintiff must have both title and possession, but this does not mean that he must have a paper title to the land, it only means that he must be claiming the land under such a title as would give him the right to the possession of it, and this character of title may rest on adverse possession, or on a sufficient parol agreement by which the party claiming the land has the right to its possession. For example, under the facts in this case, the establishment of this agreed line to settle

the dispute between them as to the correct location of the line had the effect of investing the Nieces with such title to the land up to this line as would enable them to bring a suit to quiet the title to the same extent as if they had a paper title to it. Lemoyne v. Hays, 145 Ky. 415; Rice v. Blair, 161 Ky. 280.

Nor does the statute mean that the party who brings a suit to quiet his title must be in actual physical possession of the particular piece of land to which he wants his title quieted. It is true that he must be in the actual possession of the land, but if he—as were the Nieces—is in actual physical possession of another body of land, of which the land to which he wishes to have the title quieted is a part, then he will be in possession of it within the meaning of the statute. To illustrate in this case, when this agreed line was establised it took the place of the original line between the lines of the Nieces and Bowens, and placed the Nieces in the possession of the land as fixed by the agreed line as effectively as they were in possession up to the original line before the agreed line was located, and the land that the Nieces got when the agreed line was established became, and continued to be, a part of the tract of which they had always been in actual physical possession. It is well settled that when a party is in the actual physical possession of any part of a body of land to which he has good title, whether it be acquired by regular conveyance or by adverse possession, or by the location of agreed line, he is in the possession of the whole of it, and may bring a suit to quiet the title to any part of it.

The other argument is that where the junior title calls for, and runs with the lines of the senior title, any agreement by which the party claiming under the senior title gives up a part of his land is without consideration and void. Stated in these terms, the argument is sound, but there is a well-recognized principle that where there is a bona fide dispute between two adjoining landowners as to the location of the line between their lands, although one of them may have the senior and the other the junior title, and although the lines of the junior title may call for the lines of the senior title, and this dispute is settled by the establishment, in parol, of an agreed line between them, this parol agreement will be deemed to rest on a sufficient consideration, and the agreed line will take

the place of the original line.   Warden v. Addington, 131 Ky. 296.

Nor is it necessary in all cases where an agreed line is established that the parties should acquiesce in the line for fifteen years before their right to rely on it as the real line becomes fixed so as to give to each a claim of title to it.

Thus it was said in Garvin v. Threlkeld, 173 Ky., 262: "While the validity of parol agreements to settle disputed boundaries was long resisted on the ground that, in effect, they passed the title to real property without the solemnities required by the statute, it is now settled that where the dividing line is uncertain and there is a bona fide dispute as to its location and the parties agree on the dividing line and execute the agreement by marking the line or building a fence thereon, such an agreement is not prohibited by the statute of frauds, nor is it within the meaning of the provisions of the law that regulate the manner of conveying real estate.   The reason for the rule is that the parties do not undertake to acquire and to pass the title to real estate, as must be done by written contract or conveyance.   They simply by agreement fix and determine the situation and location of the thing that they already own, the purpose being simply by something agreed on to identify their several holdings and to make certain that which they regarded as uncertain.   .   .   . While it is true that in a number of cases, where the executed agreement fixing the dividing line was followed by acquiescence of each of the parties, or their adverse possession for the statutory period of fifteen years, this fact was adverted to in the opinion as an element of considerable weight.   .   .   .   We have never held that where the agreement was actually executed by the parties it was not valid if not acquiesced in or followed by adverse possession for a period of fifteen years,   On the contrary, we distinctly held in the case of Frazier v. Mineral Development Co., 86 S. W. 983, that an oral agreement fixing the boundary lines may be enforced in equity if the parties have recognized the line and treated it as the true division, without a showing that it had been so recognized for fifteen years.   Indeed the great weight of authority is to the effect that the agreement, when followed by possession with reference to the boundary so fixed, will be conclusive on the parties, although the

possession may not have been for the full statutory period."

For the reasons indicated, the judgment is reversed with directions to enter a judgment giving the Nieces and Turner the relief prayed for.