## Roesener v. Burdette, et al.

(Decided March 24, 1925.)

### Appeal from Ohio Circuit Court.

1. Principal and Agent—One Cannot Act through Another, and then Insist that Such Other Not his Agent.—One cannot act through another person, and then insist that such person was not his agent.

2. Principal and Agent—Notice to Lessee's Agent of Lessor's Rejection of Rental Tendered for Oil and Gas Lease Held Notice to Lessee.—Where an agent had authority to make payments of rent on oil and gas lease for lessee, it was within apparent scope of his authority to receive notice on behalf of lessee of any claims of lessor growing out of nonpayment of rents, and hence notice to such agent of lessor's rejection of rentals tendered, and that lease was null and void, was notice to lessee.

3.  Mines and Minerals—Facts Held to Show Abandonment of Lease.
—A lessee of an oil and gas lease, who received notice through
his agent that lessor rejected rentals tendered and that lease was
null and void, but notwithstanding such knowledge took no steps
to assert his rights nor indicate his purpose to hold lease or to
develop property until after expiration of two years, held to have
abandoned such lease.

MILLER & ROWE and FLOYD J. LASWELL for appellant.

HEAVRIN & HEAVRIN and OTTO C. MARTIN for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On February 3, 1920, O. T. Burdette and Margaret
Burdette, his wife, executed and delivered to B. A. Kin-
ney two oil and gas leases, one on a 35-acre tract of land,
and the other on a 178-acre tract of land, both situated in
Ohio county. The consideration for each lease was $1.00
cash, and each contained the following provisions:

"First: Lessee agrees to complete a well upon
said premises within one year from this date, or
thereafter pay to lessors rental as hereinafter pro-
vided, until a well is completed or the property
hereby granted is reconveyed to lessors.

"Second: Should oil be found in paying quan-
tities the lessee agrees to deliver to the lessors free
of charge into tanks or pipe lines ⅛ share or part of
all crude oil produced or saved from the premises.

"Third: Should gas be found in paying quan-
tities, the lessee agrees to pay $100 each year for the
product of each well while the same is being sold off
the premises. The lessor to have gas free of cost
to heat and light one dwelling house during the same
time, at the well, to be used at the lessors' risk.

"In the event a well is not begun on the prem-
ises within one year from date hereof (unavoidable
accidents and delays excepted), lessee may there-
after pay a yearly rental of 25 cents per acre, pay-
able quarterly, in advance, until a well is completed,
which payments for delays in completing a well may
be made direct to them or deposited to their credit in
the Bank of Whitesville, Ky., which payment shall
fully and completely extend this lease from time to
time until a well is completed, but not to exceed five
years, and lessors agree to accept said rental pay-

ments when made and mail receipt for same to lessee.

"And it is further agreed, that the lessee may at any time remove all his property and reconvey the premises hereby granted, which conveyance said lessors agree to accept, and thereupon this instrument shall become null and void, and the payments which shall have been made be held by the lessors as the full stipulated damages for nonfulfillment of the foregoing contract."

The leases were duly recorded in the Ohio county clerk's office on May 25, 1921.

On May 31, 1921, the two leases were transferred to C. E. Roesener by written assignment, which was also recorded in the office of the clerk of the Ohio county court.

No wells were begun or completed on either lease within one year from the date thereof, or at any other time, and the first installment of rent, which was payable quarterly, in advance, fell due on February 3, 1921. That installment, as well as the one due on May 3, 1921, was promptly paid by the lessee, B. A. Kinney. Neither the third quarterly installment, which was due on August 3, 1921, nor the one due on November 3, 1921, was paid. However, on November 21, 1921, Mr. Floyd Laswell, an attorney who seems to have been acting for Mr. Roesener, wrote a letter to Burdette enclosing checks for the defaulted payments. Burdette refused to accept the payments and returned the checks to Mr. Laswell in a letter stating that Roesener had failed to keep up the leases and that they were null and void. After that time, no rentals were paid or tendered and Roesener made no effort to develop the property. However, in the month of December, Mr. Laswell, according to Burdette, called on him and talked to him about getting a new lease. After some discussion, it was agreed that Mr. Laswell would return in two or three days and take the matter up, but Burdette never heard from him after that time.

On September 4, 1923, Burdette and wife executed and delivered to D. J. White and H. D. Nicklin an oil and gas lease on the 35-acre tract of land which had theretofore been leased by B. A. Kinney and assigned to Roesener. White and Nicklin began operations immediately and drilled two producing wells at a cost of about $9,000.00.

On January 8, 1924, and after the producing wells had been drilled, Roesener filed this action against Burdette and wife, and White and Nicklin to quiet his title to the 35-acre lease. White and Nicklin filed their joint and separate answers pleading forfeiture, abandonment and estoppel. At the same time, Burdette and wife filed their answer and counterclaim asking that both the 35-acre lease, and the 178-acre lease, be cancelled. On final hearing, the chancellor entered judgment dismissing the petition and cancelling the leases held by Roesener. Roesener appeals.

We need consider only the question of abandonment. Though appellant claims that Mr. Laswell was not his agent, it must not be overlooked that one cannot act through another person, and then insist that such person was not his agent. Appellant admits that he asked Laswell to attend to the payment of rentals on the leases here involved. As Laswell had authority to make the payments, it clearly was within the apparent scope of his authority to receive notice on behalf of appellant of any fact connected with the payments, and therefore of any claim of the lessor growing out of the nonpayment of the rentals at the proper time. Hence, notice to Laswell that the lessor would not accept the rentals tendered, and that the leases were null and void, was notice to appellant. Moreover, appellant admits that he was apprised of the lessor's position in the matter. Notwithstanding such knowledge, he took no steps to assert his rights nor did he indicate in any way his purpose to hold the leases or develop the property until after the expiration of two years, during the last few months of which time, a new lease had been given, and two producing wells been brought in, on one of the tracts. In our opinion, these circumstances make out a case of abandonment, Huggins v. Daley, 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320, and the chancellor did not err in so holding.

Judgment affirmed.