## Middle Creek Coal Company v. Harris, et al.

(Decided January 18, 1927.)

Appeal from Floyd Circuit Court.

1. Mines and Minerals—Jury should Determine Location of Disputed One Acre Reservation Before Determining Value of Coal Taken Therefrom.—Where exact location of one acre reservation from

which coal was alleged to have been taken by defendant is disputed, proper location thereof should be determined by jury before determination of value of coal removed therefrom.

2. Mines and Minerals—Evidence that Reasonable Royalty Value of Coal was, Because of Abnormal Conditions, Greater at Time of Taking, Held Admissible.—Where, by reason of abnormal conditions at time coal was taken from lands of another under mistaken belief of right, owner could have obtained more than usual price, evidence that reasonable royalty value of coal at such time was greater than under normal conditions, was admissible.

3. Mines and Minerals—Customary Royalty for Coal Lands is Proper Measure of Damages where Coal is Taken from Another's Lands Under Mistaken Belief of Right.—Usual and customary price paid for royalty in coal lands is proper measure of damages, where coal is taken from another's lands under mistaken belief that he who takes it has right thereto.

4. Mines and Minerals—Evidence of Offers Made for Royalty in Coal Lands Held Incompetent in Determining Damages for Coal Mistakenly Taken from Another's Lands.—Evidence as to offers made for royalties in coal lands is incompetent in determining proper measure of damages for coal taken from another's lands under mistaken belief of right.

5. Mines and Minerals—Evidence of Amount Paid as Royalty for Determination of Proper Measure of Damages is Admissible Only when Contract was in Good Faith.—In determining proper measure of damages for taking coal from another's lands under mistaken belief of right, evidence as to amount paid as royalty can only be admitted where contract for payment was in good faith, and with intention to conduct operations in usual and ordinary way.

COMBS & COMBS and J. D. HARKINS for appellant.

MAY, ALLEN & MAYO for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The former opinion in this case is found in 205 Ky. 119. The facts are fully stated in that opinion. The only thing left to be determined at the second trial was the reasonable royalty value of the coal taken from the one acre reservation by appellant.

Before a jury could determine the value of the coal in place which was taken from the one acre reservation it was necessary to have a definite location of the one acre reservation or else such location must have been determined by the jury. The boundary of this reservation is set out in the former opinion. A reading of the description of the reservation and the language used therein convinces us that it was the intention of the

parties to the conveyance that the reservation should contain one acre. It appears that the grantor in the deed had in mind the reservation of one acre and that the reservation should be bounded by four straight lines of equal length. Each line was to be seventy yards in length, but while the grantor had this in mind he had another idea which contradicted his square acre intention. The beginning corner of the reservation was "a small black pine standing on the southeast end of the point about thirty-five steps from the grave of James P. Harris, Sr." The first line was to run an east course seventy yards around the formation of the point to a stake. It is obvious that a straight line cannot run around any object. In the former opinion the court held that the first call in the reservation "should run around the formation of the point seventy yards east of the beginning corner." This left the location of the reservation undertermined except as to the first line.

When the case was returned to the lower court it appears that three or more surveys were made, all locating the reservation differently. A dispute has arisen, so it seems from the evidence, as to the correct location of the small black pine. After running around the formation a distance of seventy yards as directed in the former opinion there was nothing to indicate how the other lines should be run and that brought about the confusion indicated by the filing of the different plats made by the different surveyors.

The jury were not instructed by the court to determine the correct location of the reservation from the evidence submitted, and without such instruction we do not know whether the jury reached any conclusion as to the location of the reservation or whether it considered all of the reports of the surveyors of equal value as evidence. Without first determining where the reservation is it would be impossible for a court or a jury to determine how much coal had been taken by appellant from the reservation.

The court gave this instruction:

> "The court instructs the jury that they will find for plaintiffs against the Middle Creek Coal Company, such a sum of money as they believe and find from the evidence was at the time of the removal thereof, the reasonable royalty value of the coal re-

moved by it, in place, not exceeding in all the sum of $4,000.00, the amount claimed in plaintiff's amended petition.''

It will be seen that the instruction does not confine the jury to the value of the coal removed from the reservation. We do not see how the jury could determine the quantity of coal taken from the reservation under the instruction and if it could not determine the quantity of the coal so taken by appellant it follows that it could not determine the value thereof. The jury should have been required to determine from the evidence the correct location of the reservation. If there was no dispute as to the boundary the court should have determined the location of the reservation and told the jury in the instruction what was the proper location and allowed them to find the reasonable royalty value of the coal in place which had been taken by appellant from the reservation.

We have said that the language of the reservation itself shows that one acre was reserved and that the reservation should contain one acre. The proper method of ascertaining the boundary of this reservation according to the conclusion which we have reached will not be difficult after the beginning corner is located. The location of the beginning corner will have to be determined from the evidence showing where the small black pine formerly stood. The distance from the grave of James P. Harris, Sr., is about thirty-five steps. The use of the word ''steps'' shows that it was only an estimation. The pine stood on the southwest end of the point, which may or may not be more definite than the statement that it was about thirty-five steps from the grave of Harris. When the location of the beginning corner is determined then the first line must be run seventy yards around the formation of the point. Necessarily this will not be a straight line. If the contention of appellant is true that the words ''east course'' mean due east then the first line would have to be straight and at the same time curve around the formation. This cannot be. Certainly the call to run an east course on the first line does not mean due east regardless of what it may mean at other times and under other circumstances. After the first line has been run seventy yards around the formation of the point to a stake, the proper way to find the location of this reservation is to run a straight line from the begin-

ning corner to the stake at the end of the first line. The next step is to calculate the area inclosed by the line running around the formation of the point and the straight line running from the beginning corner to the stake at the end of the first line thus run. The area when found should be deducted from one acre. It will then be necessary to inclose the remainder of the acre by three lines describing a rectangle with the straight line above mentioned constituting the fourth line. The lines extending from the beginning corner and extending from the stake at the end of the first line should run at right angles to the straight line above defined and extend back from those points far enough that a line parallel to the first straight line mentioned will inclose an area making up the balance of one acre.

. It will be readily seen that the important question is to determine the location of the beginning corner and when that is determined the location of the reservation is to be determined by following the above directions. Appellant must be held liable for the reasonable royalty value of the coal in place which it took from the reservation.

The court should tell the jury on another trial in the instructions that if they believe from the evidence that the beginning corner is located at a point indicated on a certain plat, that the boundary of the reservation is as indicated in such plat and that they should find for the plaintiffs the reasonable royalty value of the coal in place which was taken by appellant from the reservation thus defined. If there is more than one contention as to the proper location of the beginning corner there will naturally be evidence and plats showing different locations and it must be left to the jury to determine what is the proper location, and this will all be ascertained by the location of the beginning corner.

Complaint is made by appellant that incompetent evidence was admitted by the court over its objection. The evidence discloses that at the time appellant took the coal from the reservation the demand for coal was very active and the price was unreasonably high. This condition continued for several months during the year 1920. Conditions were abnormal. Evidence was introduced by appellant tending to show that the reasonable and usual market value for the royalty in coal was from eight cents

to fifteen cents per ton in the neighborhood where this coal was located. Under ordinary conditions that would probably be the best evidence as to the value of the coal removed by appellant. But if appellees by reason of these abnormal conditions may have obtained a price for their coal in place greater than the usual price, we are of the opinion they have the right to show by the evidence, if they can, that the reasonable royalty value of the coal at the time was greater than the reasonable royalty value under normal conditions. Coal was selling at very high prices and as the price received for coal after it has been mined and placed on the market necessarily affects the royalty value of the coal in place, we are not prepared to say that the evidence was incompetent under the peculiar conditions existing at the time.

In the case of Sandy River Cannel Coal Company v. Whitehouse Cannel Coal Company, 125 Ky.. 278, the court held that where coal had been taken from the lands of another under the mistaken belief on the part of the person taking the coal that it was his, the measure of damage is generally and properly held to be the value of the coal taken as it lay in the mine. The court in that opinion also approved the rule that the valuation of coal as it lay in the mine might be. expressed as the usual royalty paid for the right of mining. In this case the court announced this principle:

> "Under such circumstances all that the plaintiff can fairly ask is that it shall be made whole. It cannot ask that it shall be enriched at the cost of the defendant or that more than a fair and reasonable compensation shall be paid it for what it has lost, the 3.56 acres of cannel coal land."

In the case of Burke Hollow Coal Company v. Lawson, 151 Ky. 305, the court adhered to the rule announced in the Sandy River Cannel Coal Company case, *supra,* with the following addition thereto:

> "The royalty is the price paid for coal as it lies in the earth. This is what it sells for. The fair market price is the usual standard for measuring the value of an article. It is worth what it may be reasonably sold for. If the owner gets this he is usually made whole; and he cannot ask more where coal has been taken innocently under an honest mis-

take as to the location of the line. Lawson was only getting a royalty on the coal taken out from his land by his authority, and all he has lost is the royalty on the coal taken by the defendant or that was lost by its wrong.''

In the case of Bennett Jellico Coal Co. v. East Jellico Coal Company, 152 Ky. 838, the court went further in defining the proper rule for determining the reasonable royalty value of coal in place. The court there said:

"In determining what is a reasonable royalty, the courts should take into account the royalties paid in that locality for coals of like quality in veins of approximately the same thickness. In order, therefore, for the chancellor to determine the sum which appellee should pay, the commissioner should be directed to hear proof as to the acreage from which the coal was mined and the manner in which the mining operations were conducted, the thickness of the seam from which the coal was taken, and the quality of the coal, and also as to whether or not the mining was conducted in a manner so as to avoid unnecessary waste of the coal. The commissioner should also hear proof and report as to the actual number of tons of coal removed from this land by appellee, and also as to the number of tons which, considering the acreage of the mine and the thickness of the seam, could have been taken from this land, if it had been properly mined. If it should appear that the coal so removed was, in amount, approximately that which, under proper mining conditions, the territory affected should have produced, then nothing should be allowed on account of improper management in the removal of the coal from the mines. On the other hand, if the amount of coal shown to have been removed from this land is materially less than what, the evidence shows, should have been produced from the given territory, the court may, in addition to the value of the actual amount of coal removed, award appellant compensation for such as could have been, by pursuing proper mining methods, removed from the mines, but which, because of improper mining methods, was destroyed. The amount of coal, when arrived at in this way, at the usual and customary

royalty for similar coals in that locality, fixes the sum for which appellant should be given judgment."

It will be seen from the opinions cited that the usual and customary price paid for a royalty in coal lands is the proper measure of damages in determining what should be paid for coal taken from the lands of another under the mistaken belief that he who takes it has the right thereto.

The record in this case does not show a state of facts which is calculated to satisfy the mind of the court as to what was the usual and customary royalty paid for coal in that section at the time it was taken. We are of the opinion that the evidence as to the price paid for the royalty in coal in that section was competent, but evidence as to offers made for the royalty is not competent. It would make the rule too uncertain to allow such evidence. Where a price per ton was actually paid for such royalty under substantially similar conditions as existed in connection with the coal under this reservation evidence of the price so paid is competent evidence and, of course, evidence as to the usual and customary royalty is always competent under such circumstances. It is not competent to show that some man who wanted to operate a wagon mine as long as boom prices continued was willing to pay a large price for the coal in place, as that is not a royalty value established in good faith. The evidence as to the amount paid as a royalty can only be admitted when the contract for the payment was in good faith and with the intention to conduct an operation in the usual and ordinary way that those dealing in the production of coal conduct their business.

For the reasons indicated the judgment is reversed and remanded with directions for further proceedings consistent with this opinion.