### Kentucky Harlan Coal Co. et al. v. Harlan Gas Coal Co.

(Decided Oct. 11, 1932.)

B. M. LEE and FORESTER & CARTER for appellants.

JAMES H. JEFFRIES for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming on cross appeal, and reversing on original.

The Kentucky Harlan Coal Company and the Harlan Gas Coal Company are corporations, engaged in

mining coal on adjoining lands. The title to its coal lands was acquired by the Harlan Gas Coal Company by three leases, one dated April 1, 1919, and executed by A. B. Cornett to James K. Griffin and Frank B. French; another dated April 20, 1912, executed by A. B. Cornett and the children of A. B. Cornett, including his son, D. B. Cornett, to Griffin and French, and the third one by A. B. Cornett, dated February 1, 1915, to the Harlan Town Coal Company. The Harlan Gas Coal Company is the successor in title to Griffin and French and the Harlan Town Coal Company, except a certain boundary known in this litigation as 35 acres, which was released to A. B. Cornett by the Harlan Town Coal Company prior to the time the Harlan Gas Coal Company acquired its title.

The action was originally instituted by the Harlan Gas Coal Company against the Kentucky Harlan Coal Company to recover damage for its alleged negligence in causing water from its mine to flow into and damage the mine of the Harlan Gas Coal Company. During the preparation of the case for trial, the Harlan Gas Coal Company claims that it discovered that the Kentucky Harlan Coal Company had entered and mined the coal under the 20.4 acres of land covered by its lease.

The appellants contend that the pleadings admit that the line between the property in controversy is a straight line, running north and south.

In its original petition, the Harlan Gas Coal Company averred "that defendant's said coal mining property lies adjoining and on the west side of plaintiff's said leasehold, * * * being a fairly straight line extending approximately in a north and south direction, the plaintiff owning and holding the leasehold properties immediately east of said line and defendant owning, holding and operating the coal mining properties immediately to the west of said line."

In its original answer the Kentucky Harlan Coal Company alleged that "the defendant through its subsequently acquired lease is the holder and owner of all the leasehold property and coal laying to the west of said Lewis Farmer patent line."

The Harlan Gas Coal Company made this response:

"The Kentucky Harlan Coal Company has been for some time past the holder and owner of all the leasehold property and coal lying to the west of said Lewis Farmer patent line to the north of the crest of Little Black Mountain * * * that the defendant does not hold or own any property of the original leasehold properties mentioned, described and claimed by the plaintiff herein, except such portion of same as lies north of the crest of Little Black Mountain, and between the easterly line of the Aaron Fountain 1,600 acre patent and the westerly line of the Lewis Farmer 600 acre patent No. 8093 * * * that the lease set up and described in its original petition and its reply herein, lap upon and conflict with the subsequently acquired lease of the Kentucky Harlan Coal Company, the total extent of said lap being 25 acres, more or less."

Thus it is shown that the appellant's contention in respect to the pleadings is incorrect.

By an amended petition, the Harlan Gas Coal Company made A. B. Cornett and D. B. Cornett defendants, alleging that the Kentucky Harlan Coal Company acquired title to the land claimed by it by leases from them and sought to recover of them by reason thereof.

The Kentucky Harlan Coal Company made its answer a counterclaim and cross-petition against the Cornetts, alleging that its right to mine the coal on the 20.4 acres was conferred by title derived by mesne conveyances from the Cornetts. It sought to recover of them whatever sum the Harlan Gas Coal Company should be decreed against it by reason of it having taken the coal from the 20.4 acres.

The court determined that the title to 16 acres of the 20.4, claimed by the Harlan Gas Coal Company, was prior and superior to that of the Kentucky Harlan Coal Company; that the Kentucky Harlan Coal Company had mined 64,000 tons on the 16 acres, and the profit to it was 18 cents per ton, amounting to $11,520. A recovery of this sum, with interest, was permitted against the Kentucky Harlan Coal Company and A. B. Cornett and D. B. Cornett, with directions that "thereafter" the amount be prorated between A. B. and D. B. Cornett, according to their respective interests in the

16 acres. The Kentucky Harlan Coal Company was given a judgment on its counterclaim against A. B. and D. B. Cornett for the $11,520 as a recoupment. This appeal is prosecuted by the Cornetts and the Kentucky Harlan Coal Company from this judgment.

It is conceded that the Harlan Gas Coal Company and the Kentucky Harlan Coal Company derived their respective title from a common source, and that A. B. Cornett and D. B. Cornett were parties to the conveyances from which their respective title was derived, except that portion of the land which was embraced by the lease executed by A. B. and D. B. Cornett and Hall under which the Kentucky Harlan Coal Company asserts title, which embraces a portion of the disputed 16 acres.

The Harlan Town Coal Company acquired title to coal land conveyed to Griffin and French. The Harlan Gas Coal Company was thereafter organized and acquired title of the Harlan Town Coal Company to the same land. D. B. Cornett, W. W. Lewis, C. B. Cawood, Williams Brothers, and A. B. Cornett incorporated the Harlan Gas Coal Company, the successor in title of the coal lands of the Harlan Town Coal Company. It was decided that the line between the coal lands owned by the Harlan Gas Coal Company and those adjoining it was "jagged," and that it was to the interest of all parties concerned to have it surveyed and the "jagged" line straightened. Henry Groos was agreed on by the interested parties to make the survey. He made it and furnished them with a map of the property. The owners of the adjoining lands and leases "operated the property according to that map." His map showed the boundary line between the properties, which was accepted by the lessees on three sides, the Harlan Gas Coal Company, the R. C. Tway Coal Company, and the Kentucky Harlan Coal Company; and they continuously operated their leases according to the line made by Henry Groos, until a survey and map was made by Fox during the pendency of this action. The Groos survey and map were completed in 1916. All of the stock in the Harlan Gas Coal Company was owned by W. W. Lewis, A. B. Cornett, D. B. Cornett, and C. B. Cawood, at that time. In August, 1917, they sold the entire stock in the corporation to Alexander Y. Malcomson; R. C. Hurd, as agent of Malcomson, conducted the negotiations and

purchased the stock for him. During the negoaiations, D. B. Cornett furnished to Hurd, the agent of Malcomson, a copy of the Groos survey and map or blueprint, showing the coal lands as then claimed to be owned by the Harlan Gas Coal Company by virtue of its leases. After Malcomson became the owner of all the stock in the corporation he, in the name of the corporation, assumed ownership, actual possession, and operation of the coal lands owned by the Harlan Gas Coal Company at the time he so acquired the entire stock of the corporation.

R. C. Hurd, as manager of the operation for Malcomson, retained the possession of the map or blueprint which was delivered to him by Cornett at the time of the completion of the sale of all the stock in the Harlan Gas Coal Company to Malcomson. Hurd stated that, during the negotiations of the sale of the stock to Malcomson, the manager of the corporation and the owners of the stock at that time represented to him as the agent of Malcomson, as a part of the transaction in which he purchased the stock for Malcomson, that the line represented by the Groos map or blueprint was the line of the coal land which the Harlan Gas Coal Company at that time owned, and which Malcomson, by his purchase of the stock, would acquire and that, during the time he operated the mines for Malcomson, he recognized the line as shown by the Groos survey and map as the correct line dividing the coal lands of the Harlan Gas Coal Company and the Kentucky Harlan Coal Company. He is corroborated by other witnesses and not contradicted even by Malcomson.

The purchase by Malcomson of all the stock in the Harlan Gas Coal Company did not ipso facto dissolve the corporation. Louisville Banking Co. v. Eisenman, 94 Ky. 83, 21 S. W. 531, 1049, 14 Ky. Law Rep. 705, 19 L. R. A. 684, 42 Am. St. Rep. 335. His acquisition and ownership of the entire stock merely suspended the franchise of the corporation until the stock was thereafter transferred by him to others. Louisville Gas Co. v. Kaufman, 105 Ky. 131, 48 S. W. 434, 20 Ky. Law Rep. 1069; George T. Stagg Co. v. E. H. Taylor, Jr. & sons, 113 Ky. 709, 68 S. W. 862, 24 Ky. Law Rep. 495; Wier v. Bush, 4 Litt. 429.

Notice of the agreed line, the survey and map of Groos, to Hurd, at the time of his negotiations of the purchase of the stock for Malcomson, was notice to

240

240

Malcomson. Miller v. Jones (Ky.) 111 S. W. 295, 33 Ky. Law Rep. 848; Vizard Investment Co. v. York, 167 Ky. 634, 181 S. W. 370. His physical possession of the map or blueprint, as agent for Malcomson, was the same as if Malcomson himself had the actual possession thereof. Stowers v. Runyon, 206 Ky. 479, 267 S. W. 554; Childers v. Billeter, 144 Ky. 53, 137 S. W. 795; Roesener v. Burdette, 208 Ky. 137, 270 S. W. 731; Shrader v. Porter, 210 Ky. 429, 276 S. W. 115; Holzhauer v. Sheeny, 127 Ky. 28, 104 S. W. 1034, 31 Ky. Law Rep. 1238; Bramblett v. Henderson (Ky.) 41 S. W. 575, 19 Ky. Law Rep. 692; Connolly's Ex'r v. Beckett (Ky.) 105 S. W. 446, 42 Ky. Law Rep. 356; Zaami v. Joseph Denunzio Fruit Co., 182 Ky. 171, 206 S. W. 272; Ky. River Coal Corp. v. Sumner, 195 Ky. 119, 241 S. W. 820; Stowers v. Runyon, 206 Ky. 479, 267 S. W. 554.

A purchaser dealing with property, the record title of which appears to be complete, and who has information of extraneous facts to put him on inquiry respecting some interest, claim, or right, will be charged with notice of all the facts which he might have learned by means of personal inquiry. Ky. River Coal Corp. v. Sumner, supra.

The consequence of the knowledge imparted to Hurd as his agent, when conducting the negotiations, was notice to Malcomson as the purchaser of all of the stock which must be imputed to the corporation and which brings the corporation within the rule that the knowledge of the individual incorporators or the knowledge of the board of directors is knowledge of the corporation. Mercantile National Bank v. Parsons, 54 Minn. 56, 55 N. W. 825, 40 Am. St. Rep. 299; Enterprise Foundry & Mach. Works v. Miners' Elkhorn Coal Co., 241 Ky. 779, 45 S. W. (2d) 470.

While it is a general rule the stockholders of a corporation are distinct from the corporation itself, and where a stockholder or a director individually has knowledge of an outstanding claim, interest, or title, and does not in fact communicate that fact either to the board of directors or to the corporation, and deals with the corporation in his own behalf, his knowledge of such outstanding equities cannot be charged to the corporation. Arnett v. Stephens, 199 Ky. 730, 733, 251 S. W. 947; Ky. By-Products Coal Co. v. Cline, 204

Ky. 731, 265 S. W. 306; Ratliff v. Ky. & W. Va. Power Co., 232 Ky. 262, 22 S. W. (2d) 620. But the acquisition by Malcomson of the entire stock of the corporation so suspended the franchise of the corporation as to prevent its application in the present case.

During the period of such suspension, as a consequence of his purchase and ownership of the stock of the corporation, he was, as a matter of law, the board of directors, or the governing authority in control of the corporation, and by and through him only the corporation could receive knowledge or notice. Notice to him was necessarily and inevitably notice to the corporation during the period of suspension. In addition to this, at the time the land covered by the leases of the Harlan Gas Coal Company beyond the line as fixed by the Groos survey and map was in the actual possession of the Kentucky Harlan Coal Company, which was sufficient notice to Malcomson and his corporation of its possession and outstanding claim up to the Groos line shown by his survey and map. Whittaker v. Farmers' National Bank, 237 Ky. 596, 36 S. W. (2d) 18.

It is a well-recognized rule that landowners and leaseholders may by writing, or by parol, agree on a dividing line, there being room for controversy, or where each relinquishes a part of his boundary and surrenders actual possession thereof to the other, and they and those claiming under them are bound by the line agreed on. Jamison v. Petit, 6 Bush, 669; Grigsby v. Combs (Ky.) 21 S. W. 37, 14 Ky. Law Rep. 651; Frazier v. Mineral Dev. Co. (Ky.) 86 S. W. 983, 27 Ky. Law Rep. 815; Ball v. Loughridge (Ky.) 100 S. W. 275, 30 Ky. Law Rep. 1123; Grider v. Davenport (Ky.) 60 S. W. 866, 22 Ky. Law Rep. 1455; Bordes v. Leece, 183 Ky. 146, 208 S. W. 780; Hoskins v. Morgan, 197 Ky. 736, 248 S. W. 210.

The agreement of the parties in interest, the survey and map made by Groos, followed up by the surrender of the possession, the one to the other, according to the Groos survey and map, were binding on the parties to the agreement and those claiming under them. Malcomson bought and paid for all the stock with actual knowledge to his agent of the dividing line between the leases, and thereby acquiesced in the adjustment of the line. It should be presumed that in his purchase of the stock of the corporation he did not pay for the leases of the coal land beyond the Groos line.

His act in accepting and paying for the stock with actual knowledge of the previous agreement to adjust the line was an election by him to abide thereby. The undisputed facts are sufficient to estop Malcomson and his successors in title, including his corporation, from a recovery herein beyond the line as surveyed and mapped by Groos. Warden v. Addington, 131 Ky. 296, 115 S. W. 421, approved in Abrams v. Wild (Ky.) 120 S. W. 357; Turner v. Bowens, 180 Ky. 755, 203 S. W. 749; Garvin v. Threlkeld, 173 Ky. 262, 190 S. W. 1092.

The general rule that, if a trespasser encroaches or enters on the land of another, and willfully and knowingly, or "intentionally and without claim or color of right, made honestly and in good faith," mines mineral and removes the product from the soil, converts it into personalty, and appropriates the converted article, the value thereof at the time it was appropriated is the measure of recovery. North Jellico Coal Co. v. Helton, 187 Ky. 394, 219 S. W. 185; Thompson v. Dentzell, 232 Ky. 755, 24 S. W. (2d) 607; New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183, 221 S. W. 245. But, if the trespass is made by "innocent mistake," there, the criterion of recovery is the value of the product in place or the reasonable and customary royalty. Ashurst v. Cooper's Adm'r, 232 Ky. 498, 23 S. W. (2d) 916; Middle Creek Coal Co. v. Harris, 217 Ky. 620, 290 S. W. 468; Johns Run Coal Co. v. Little Fork Coal Co., 223 Ky. 230, 3 S. W. (2d) 623; Sandy River Cannel Coal Co. v. White House Cannel Coal Co., 125 Ky. 278, 101 S. W. 319, 102 S. W. 320, 30 Ky. Law Rep. 1308, 31 Ky. Law Rep. 374; Blackberry, Ky. & W. Va. Coal & Coke Co. v. Kent. Coal & Coke Co., 225 Ky. 346, 8 S. W. (2d) 425. To bring himself within the rule controlling a claim against a trespasser for damage committed by him by an "innocent mistake," as this term is applied in such cases, the trespasser must allege and prove such facts as will show his acts were not "willful and knowingly committed," or not "intentional". Griffith v. Clark Mfg. Co., 212 Ky. 498, 279 S. W. 971; Middle Creek Coal Co. v. Harris, supra; Liberty Bell Gold Mining Co. v. Smuggler-Union Mining Co., 203 F. 795, 122 C. C. A. 113; Id., 231 U. S. 747, 34 S. Ct. 320, 58 L. Ed. 464; U. S. v. Homestake Mining Co., 117 F. 481, 54 C. C. A. 303; Blackberry, Ky. & W. Va. Coal & Coke Co. v. Kentland Coal & Coke Co., supra.

In Middle Creek Coal & Coke Co. v. Harris, 205 Ky. 119, 265 S. W. 465, 466, the construction and interpretation of the deed was the determinative issue, and this court said:

"In the light of these circumstances, * * * in view of the doubtful language of the deed and of the fact that it is susceptible of the construction placed upon it by the coal company and of the confusion existing as to the location of the lines, we do not think the company was guilty of a willful trespass in mining the coal in question. It follows that the recovery should have been limited to the reasonable royalty value of the coal as it lay in the earth. New Domain Oil Co. v. McKinney, 188 Ky. 183, 221 S. W. 245; Burke Hollow Coal Co. v. Lawson, 151 Ky. 305, 151 S. W. 657; Bennett Jellico Coal Co. v. East Jellico Coal Co., 152 Ky. 838, 154 S. W. 922."

In U. S. v. Homestake Mining Co. (C. C. A.) 117 F. 481, 488, the court used this language:

"One who acts in good faith upon the erroneous advice of reputable counsel upon questions of legal right concerning which a layman could hardly have actual knowledge, is not chargeable with bad faith, or with a willful intent to commit a wrongful act because his counsel was mistaken in his view of the law."

This was quoted and approved in U. S. v. Midway Northern Oil Co. (D. C.) 232 F. 619. The principle was applied in U. S. v. McCutchen (D. C.) 238 F. 575.

In Blackberry, Ky. & W. Va. Coal & Coke Co. v. Kentland Coal & Coke Co., 225 Ky. 346, 8 S. W. (2d) 425, 427, there was a confusion of titles, and this court, in determiinng whether the trespass was by "innocent mistake" or knowingly and willfully or intentionally committed, said:

"The difficulty encountered by this court in arriving at a conclusion as to which of the two claimants should be awarded the decision affords ample evidence that the Hatfields and those claiming under them may well have indulged the good-faith belief that they were the owners of the 80 acres of land. Under the facts appearing in the record, this court concludes that the chancellor

correctly adjudged the trespass complained of to have been an innocent rather than a willful trespass.''

In U. S. v. Homestake Mining Co. (C. C. A.) 117 F. 481, 486, it was written:

"The test to determine whether one was a willful or an innocent trespasser is not his violation of the law in the light of the maxim that every man knows the law, but his honest belief, and his actual intention at the time he committed the trespass; and neither a justification of the acts nor any other complete defense to them is essential to the proof that he who committed them was not a willful trespasser. Durant Min. Co. v. Percy Consol. Mining Co., 35 C. C. A. 252, 254, 93 F. 166, 168, 169; Gentry v. U. S., 41 C. C. A. 185, 188, 101 F. 51, 54; U. S. v. Van Winkle, 51 C. C. A. 533, 113 F. 903, 905.''

When the facts herein are measured and evaluated by these principles, the proper measure of recovery is the one controlling the recovery of a trespasser, where his act is committed by an ''innocent mistake,'' as this term is defined in the cases supra, and many others that might be cited.

The appellants Cornett insist that their liability should be determined by York v. Hogg, 171 Ky. 599, 188 S. W. 663. The appellee contends that the principle stated in Blackberry & Kentucky River Coal & Coke Co. v. Kentland Coal & Coke Co., supra; Weaver v. Ficke, 174 Ky. 432, 192 S. W. 515; L. & E. R. R. Co. v. Breathitt County Board of Education, 176 Ky. 541, 195 S. W. 1094; Stephens v. Schadler et al., 182 Ky. 833, 207 S. W. 704, is applicable and controlling.

In York v. Hogg, the rule was stated that ''one who neither cuts nor removes the timber from, nor commits any trespass upon, the land of an adjoining land owner, but merely sells the timber thereon to another, who alone cuts and removes it, * * * is not liable to the adjoining land owner in an action of trespass for the value of the timber so removed and for damages growing out of its removal.'' Hogg sold and conveyed in fee simple the timber to Walker and his associates. The trespass was committed by Walker and his associates and their vendee. After his sale and conveyance

of the timber, Hogg had no further interest in nor title to it. In the cutting and removing by Walker, his associates and vendee, the timber covered by his conveyance, they were not in any sense, or for any purpose, the agents of Hogg. There was no relation of principal and agent or privity of interest between him and Walker, his associates and vendee. Hogg's liability existed solely in virtue of his contract of absolute sale and the deed made pursuant thereto, which was not susceptible to the construction that it authorized, advised, encouraged, incited, or procured the commission of the trespass on the land of York. None of the elements of the relations of principal and agent exists between a vendor and vendee, where the title in fee simple vests in the vendee. The vendor's liability is determined by the covenants of his deed. However, a lessor who by his lease vests the right or privilege in a lessee to mine or cut timber on land covered by his lease, reserving in himself the right to a royalty, or a portion of the proceeds, occupies a different position in relation to a trespass committed by the lessee on adjoining lands by virtue of a lease from that of a grantor who by his deed vests the title in fee in his vendee and thereby severs absolutely all his interest, right, and title in the property conveyed. Under such lease there exists and continues between the lessor and lessee or his assignee, during the life of the lease, the relations of principal and agent, and, if the lessee or his assignee commits a trespass on adjoining land in the execution of the lease, he is deemed the agent of the lessor in its commission, and the law implies that, in the commission of the trespass, the lessee, or his assignee, by virtue of the lease, was authorized, encouraged, and procured by the lessor to commit it. It is on this theory that the lessor in such case is liable for trespass committed by the lessee or his assignee on adjoining lands, when executing or carrying out the provisions of the lease.

This principle would be applicable and controlling in this case, except, according to our view, after the leases of the Harlan Gas Coal Company and the Ky. Harlan Coal Company were executed and delivered by the Cornetts and Hall and accepted by them and their assignees, they or their assignees and the adjoining landowners agreed and accepted the Groos survey and map and recognized the line as fixed

by the Groos survey and map as the correct line between their respective leases, and actually claimed, occupied, and held possession accordingly, during the period of time in which the coal was mined up to it by the Kentucky Harlan Coal Company. Accepting the appellee's contention that the mere execution and delivery of the leases by the Cornetts and Hall are sufficient to bring the case within the rule stated in the cases of Blackberry & Ky. Coal &. Coke Co. v. Kentland Coal & Coke Co., and other cases which we have named, the agreement to locate the line between the leases, by the Groos survey and map, followed up by the actual occupancy of the land and the mining of the coal thereunder, according to his survey and map, was a severance of the relation of principal and agent theretofore existing by virtue of the leases by mutual agreement of the parties, based on a good consideration and constituted a revocation of whatever agency, created and existing by virtue of the original leases, between the lessors and the lessees. If thereafter the Kentucky Harlan Coal Company committed a trespass on the land covered by the leases by mining the coal beyond the line as fixed by the Groos survey and map, it would be liable therefor to the Harlan Gas Coal Company, but, so far as the Cornetts and Hall are concerned, they are not liable to it for trespass committed by the Kentucky Harlan Gas Coal Company beyond that line, which they neither authorized, assented to, encouraged, incited, nor procured. The line as located, or as may be located, by the Groos survey and map, and as recognized by the lessees and landowners, from the date thereof, is conclusive of the rights of the appellants and appellee. In the preparation of the case, a survey and map were made of the land in dispute. The survey and map made by Groos, and the courses, distances, and objects therein, were disregarded by the surveyor who surveyed and mapped the land under order of the court. The evidence was not directed or confined to the Groos survey and map. Therefore, on a return of the case, the parties will be permitted to prepare it with a view of determining their rights as herein indicated, according to the Groos survey and map.

The five-year statute of limitation was pleaded. We find no merit in the contention that the court erred in its finding as to this issue. Harlan Gas Coal Co. v. Hensley, 223 Ky. 221, 3 S. W. (2d) 640; Harlan Gas Coal Co. v. Hensley, 234 Ky. 307, 28 S. W. (2d) 6.

The facts abundantly sustain the finding of the chancellor as to claim for damage growing out of the alleged flooding of the mine by the Kentucky Harlan Coal Company, negligently operating its mine.

Certain depositions were taken in the case before the Cornetts and Hall were made parties. On the authority of Kerr v. Gibson, 8 Bush, 129, and other later cases, they urge that this court should not consider such depositions. We do not find objections were made to the reading of these depositions on this or any other ground. Failure to make timely objections, or to have the court to pass on objections, is a waiver of the right in this court to object to the introduction or the reading of the depositions. Holmes v. Curtis, 6 Ky. Law Rep. 659; Snedager v. Kincaid (Ky.) 60 S. W. 522, 22 Ky. Law Rep. 1347; Roberts v. Roberts, 232 Ky. 739, 24 S. W. (2d) 554; Flowers v. Miller (Ky.) 16 S. W. 705, 13 Ky. Law Rep. 250; Frazier v. Malcolm (Ky.) 62 S. W. 13, 22 Ky. Law Rep. 1876; Beatty v. Thompson's Adm'r (Ky.) 66 S. W. 384, 23 Ky. Law Rep. 1850; Houston, Stanwood & Gamble Co. v. Smith, 166 Ky. 74, 178 S. W. 1145; Webb v. Webb, 190 Ky. 574, 228 S. W. 13.

For the reasons indicated, the judgment on the cross-appeal is affirmed, and reversed on the original, for proceedings consistent with this opinion.